CASE 103—NOAH M. REYNOLDS WAS CONVICTED OF MURDER AND HE APPEALS.—FEB. 24.

## Reynolds v. Commonwealth.

APPEAL FROM BELL CIRCUIT COURT.

DEFENDANT CONVICTED OF MURDER AND APPEALS.   AFFIRMED.

HOMICIDE—SELF DEFENCE—INSTRUCTIONS—EVIDENCE.

Held:   1. In a prosecution for murder, an instruction that if, at the time defendant killed deceased, he was about to do defendant or his brother some great bodily harm, and that to shoot deceased was necessary, or seemed to defendant to be necessary, in the exercise of reasonable judgment, to protect himself or his brother from such injury, "either real, or to the defendant apparent," the jury should find defendant not guilty, on the ground of self defense and apparent necessity, was not objectionable on the ground that it required the jury to believe that defendant or his brother "really was in imminent danger of great bodily harm at the hands of deceased, instead of being apparently so."

2. An instruction, in a prosecution for murder, on the subject of self-defense, which collects the evidence as to former acts of violence on the part of deceased, and charges that defendant had

a right to bear arms openly and keep a lookout for decedent, and that, if he casually met him, he need not wait to be assaulted, but may consider the past, and, if he believes that he is in apparent danger of great bodily harm at decedent's hands, he may shoot him, is erroneous, as unnecessarily grouping and emphasizing the facts, and giving undue prominence to particular evidence.

3. Oder v. Commonwealth, 80 Ky., 32, 4 R., 18, is overruled so far as it conflicts with the opinion in this case.

J. G. FORRESTER, W. G. COLSON, N. B. SMITH, AND SALYER & BAKER, FOR APPELLANT.

1. We claim that there are numerous errors committed by the trial court to the prejudice of appellant in admitting incompetent evidence and in refusing to admit competent and relevant evidence which we have pointed out in detail in this brief.

2. We insist that the court erred in its instructions given to the jury, and in refusing to give instructions asked by the defendant.

Instruction No. 5 is erroneous and is as follows: "Although the jury may believe from the evidence beyond a reasonable doubt that defendant in Letcher county and before the finding of the indictment in this case, shot and killed deceased, yet, if they believe from the evidence that at the time defendant shot and killed deceased, the deceased was then and there about to do him or the said John Reynolds some great bodily harm, and that to shoot deceased was necessary, &c." We seriously object to this instruction for the reason that it required the jury to decide that the danger actually existed at the time, and does not allow them to pass upon appellant's belief of the existence of said danger.

Instruction 3 is erroneous; it uses the words: "at a time when it was not necessary, and did not seem in the exercise of a reasonable judgment to be necessary."

No. 2 uses the word "apparent" where it should be "reasonably apparent," or "apparently."

These instructions are not skillfully drawn and one contradicts the other.

We also claim that the acting attorney for the Commonwealth in his closing speech to the jury used inflammatory language that was calculated to mislead the jury to the prejudice of the defendant which was objected to at the time.

We claim that the evidence in this case does not show that defendant was on the lookout for deceased at the time of the killing, but that the meeting was casual, and that from the previous conduct and threats of deceased and his actions at the time of the meeting, defendant had reasonable grounds to be-

lieve that deceased was then armed and about to kill him or his brother, and that by reason of the actual or apparent danger then impending, defendant had the right to shoot in his self-defense.

### AUTHORITIES CITED.

Mullins v. Com., 23 R., 2433; Cockrell v. Com., 95 Ky., 22; Com. v. Barnes, 13 R., 163; Oder v. Com., 80 Ky., 36; Redmon v. Com., 21 R., 331; Rhodes v. Com., 21 R., 1070; Gargell v. Com., 12 R., 149; Petty v. Com., 12 R., 919; Howard v. Com., 22 R., 1854; Bohannon v. Com., 8 Bush, 481, and cases cited therein.

M. R. TODD, FOR COMMONWEALTH.

CLIFTON J. PRATT, ATTORNEY GENERAL, OF COUNSEL.

The killing in this case occurred in Letcher county but was tried, by change of venue, in Bell county.

The deceased, Wright, at the time he was killed, was engaged in logging about a mile from his home on Boon Fork. On the morning of the homicide he left his home on horseback to go to the place where he was logging, traveling the usual road to his destination. Appellant resided about one quarter of a mile from deceased. When about a mile from his home, deceased was attacked by defendant and his brother, John Reynolds, and shot off his horse and instantly killed. Three wounds were inflicted on his body, one in the head under the left ear, one on the front part of the head and the other on the left arm. His head was torn to pieces, the evidence showing that the wound was inflicted with a dynamite cartridge, the calibre being 50 by 100. The evidence shows that there were from seven to ten shots fired by defendant and his brother. Directly after the shooting, defendant and his brother, John, were seen by the witness, Bentley and his wife leaving the place where deceased was lying, in a speedy way, both armed with guns. Mrs. Bentley stated that after the first shot was fired she went to her door and saw the Reynolds boys; one of them was standing with his gun down and when he saw her he broke and ran; the other was shooting at deceased. Fuller Bentley went to the place where deceased lay, five minutes after the shooting; no other person had arrived and he states that deceased was lying on his right side and that he did not see any pistol about him. He had on an overcoat, dress coat and vest. After he was taken home a pistol was found under his right arm under his vest in a holster. His vest was buttoned and the pistol was loaded in all the chambers. There was evidence

Reynolds v. Commonwealth.

showing that there were tracks behind two large stumps and a large rock about thirty yards from the path to the main road where deceased was killed, and that appellant and his brother were located near these stumps and rock, and these tracks were followed in the direction of the home of appellant.

Complaint is made by defendant of the introduction of incompetent testimony by the Commonwealth and the refusal of the court to admit competent testimony offered by defendant, but the court will discover that the defendant was not prejudiced by any error in this respect, if any error was committed.

Complaint is also made as to the instructions given by the court and of the closing argument of the attorney for the Commonwealth, but the court will find that the instructions were substantially correct, and no error was committed that affected the substantial rights of the accused.          Pearce v. Com., 10 Rep., 178; Arnold v. Com., 21 Rep., 1566.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

The appellant, Noah Reynolds, and J. C. Reynolds were jointly indicted by the grand jury of Letcher county, charged with the willful murder of William S. Wright. The case was transferred, by a change of venue, to Bell county. The trial of appellant by a jury in the Bell circuit court resulted in his conviction and his being sentenced to confinement in the penitentiary for the term of his natural life. His motion for a new trial having been overruled, he prosecutes this appeal.

Appellant, by his counsel, urges several objections of small importance, we think, to the court's action in reference to the admission of, and refusal to admit, certain evidence. These various objections have no meritorious foundation, and, after a careful examination, we are not willing to say that the substantial rights of appellant were injured by the court's rulings upon the questions involved.

There are always arising, in a case like this questions of the relevancy and competency of evidence, which lie along the debatable line of the rules of evidence, of which

the trial court can better judge than the Court of Appeals, because often the decisions of these narrow questions are properly influenced by considerations which the lower court sees and understands, but which can not always be fully reproduced in the bill of exceptions. Of such import are all of the questions raised as to the evidence in this case; and, as we have said, we do not think, after a careful weighing cf them, that the lower court's rulings were erroneous.

Appellant complains of instruction No. 5, which relates to the right of self-defense. His objection is that it required the jury to believe that, at the time of the shooting, appellant or J. C. Reynolds really was in imminent danger of great bodily harm at the hands of William S. Wright, instead of being apparently so; and he cites, in support of this objection, the cases of Cockrill v. Commonwealth, 95 Ky., 23, 15 R., 328, 23 S. W., 659. The instruction under discussion is very readily distinguished from that involved in the case cited. Instruction No. 5, if it contained only the language which appellant's counsel quote in their brief, would be inimical to the principle of the Cockrill case; but, if all the instruction is considered, every substantial right of self-defense to which appellant was entitled is found to be carefully preserved. Said instruction is as follows: "Although the jury may believe from the evidence, beyond a reasonable doubt, that the defendant, in Letcher county, and before the finding of the indictment in this case, shot and killed deceased, yet if they believe from the evidence that at the time defendant shot and killed deceased the deceased was then and there about to do him or the said John Reynolds some great bodily harm, and that to shoot deceased was necessary, or seemed to the defendant to be necessary, in the

exercise of a reasonable judgment, to protect himself or
John Reynolds from such injury, either real, or to the de-
fendant apparent, you will find the defendant not guilty,
on the grounds of self-defense and apparent necessity."
It will be observed that this instruction required the jury
to acquit the defendant if they believed from the evidence
that, at the time defendant shot and killed deceased, the
deceased was then and there about to do him or the said
John C. Reynolds some great bodily harm, and that to
shoot deceased was necessary, or seemed to the defendant
to be necessary, in the exercise of reasonable judgment,
to protect himself or the said John C. Reynolds, from
injury, "either real, or to the defendant apparent;" and
this was all to which appellant was entitled. It may be
that this instruction is not drawn as artistically as the
learned counsel for appellant would have written it, but,
as a whole, it protects every right of self-defense which
the law awards to one standing in the position of appellant.

Appellant also complains that, under the evidence in
this case, he was entitled to the instruction authorized by
the case of Oder v. Commonwealth, 80 Ky., 32, 4 R., 18.
We freely admit that there was evidence in this case to
have warranted the court in giving the instruction author-
ized in the case cited, if the principles enunciated therein
can be upheld either in reason or on authority. The in-
struction in the case of Oder v. Commonwealth is as fol-
lows: "If the jury shall believe from all the evidence that,
previous to the time of the killing, the deceased, Volney
Hall, lay in wait for the defendant, and menaced and threat-
ened to kill him, and attempted violence upon his person
with a deadly weapon, or did any or either of them, then
he had the right to consider the same in determining
whether he was in danger of losing his life or of suffer-

ing great bodily harm at the hands of Hall whenever with or near him. These alone will not excuse the killing; but the defendant had the right to bear arms openly, and, when he met the deceased, if, from such lying in wait, threats, menaces and attempted violence, if any, and from the circumstances attending the meeting, or if, from the circumstances attending the meeting alone, he in good faith believed, and had reasonable grounds to believe, that he was then and there in danger of losing his life or of suffering great bodily harm at the hands of the deceased, then he was not obliged to wait until he was actually assaulted, but he had the right to use such means as were at hand, and as were necessary, or apparently necessary, to protect himself from such immediate danger; and, if, in doing so, he shot and killed deceased, he is excusable on the ground of self-defense, and should be acquitted, unless the jury shall believe from all the evidence, beyond a reasonable doubt, that at the time of the killing the defendant sought the deceased with the intention and for the purpose of killing him, in which case he is not entitled to an acquittal on the ground of self-defense." This instruction, the court said, did not sufficiently protect the defendant, because by its terms he was excluded from considering the menace, lying in wait, and threats unless the jury believed from all the evidence that this actually occurred, whereas, in law, the defendant had a right to act upon them, whether they actually occurred or not, provided he in good faith believed, and had reasonable ground to believe, from the circumstances as they appeared to him, that the deceased had waylaid and threatened him. The question, said the court, is not whether the jury believed the deceased threatened and waylaid the defendant, but whether the defendant believed, and had reasonable ground to believe, he

had done so, and the jury should have been so instruct-
ed, and allowed to decide.  Said the court:  "The main-
tenance of self-defense in a court of justice, under such
a state of facts as exhibited by this record, requires, up-
on the part of the court, the utmost care, so that the ac-
cused may not be deprived of its right, upon the one hand,
and assassination excused, on the other.  After a care-
ful review of the authorities on the subject, we declare
the law to be this:  That when a person has been merely
threatened, by even the most lawless character, it furnish-
es no legal excuse for taking his life.  But when a per-
son has been threatened, waylaid, menaced, and assault-
ed with a deadly weapon, and he afterwards casually meets
his foe, if, from his character, antecedent conduct, and the
circumstances of the meeting, and his presence, he believes,
and has reasonable grounds to believe, judging thereof
for himself, but at his peril, that his foe is about to inflict
upon him loss of life or great bodily harm, or will then
and there carry into execution his design to kill him or do
him such harm, unless prevented, he is not bound to wait
until actually assaulted, but he may lawfully use such
force as shall be necessary to avert such impending danger;
but it is always a question for the jury to judge of the rea-
sonableness of the apprehended danger, and the unfeigned
belief of its existence by the person imperiled by it.  And
in this connection, in view of the qualification added to the
instruction quoted, it is necessary to determine the rights
of the accused under an opposite tendency of the evidence
from that contemplated by the qualification.  It must be
recorded as a right, to which all citizens are entitled, that
the accused 'may leave his home for the transaction of his
legitimate business, or for any lawful or proper purpose,'
and while so engaged, having reasonable grounds to be-

lieve, and in good faith believing, that he had been threatened, waylaid and assaulted with a deadly weapon, he had the right to carry arms openly, and keep a lookout for his enemy, or procure information of his movements in good faith, and alone for the purpose of guarding himself from surprise or being taken unawares; and if, under such circumstances, a meeting casually occurs, then the law of self-defense applies in the same manner, under similar circumstances as indicated where the meeting is casual, and without precaution against surprise, further than being armed for the purpose of self-protection; but in no state of case is one person allowed by law to hunt down or seek another for the purpose of killing him, and in pursuance of such an intention, accompanied by such an act, take his life; hence if the defendant sought the deceased with the intention of killing him, or purposely brought about the meeting between them, or made his presence a mere pretext for slaying him, he can not rely upon the law of self-defense to excuse his act, although he may have believed that he had been threatened, waylaid, and assaulted by the deceased, who would at some future time execute his design. It will be seen, from this view of the law, that the instruction was erroneous in two aspects: First, in making the right of appellant to rely upon the threats and waylaying of him by deceased dependent on the establishment of their existence to the satisfaction of the jury by the evidence; second, in not informing the jury, in connection with the qualification, that the accused had the right to keep a lookout for the deceased, or procure information of his movements, for the sole purpose of avoiding a surprise."

We freely agree with the language of the court in this case, in so far as it asserts that, in giving the instruction

authorized by the reasoning of the opinion, there is great danger that assassination may be excused. This court has, time and again, decided that it is error to unnecessarily group together facts, or supposed facts, established by the evidence, and to place them in the form of an instruction to the jury, thus unnecessarily emphasizing these facts, and giving them undue prominence in the estimation of the jury in reaching a verdict. The instruction authorized by the case cited is peculiarly inimical to this principle. It gathers up all the testimony as to former threats or attempted violence on the part of the deceased, together with the truisms that the defendant had the right to bear arms openly; to go about his ordinary business; that he might keep a lookout for his enemy; and then it adds that, if he casually meets him, he need not wait to be assaulted, but may consider all of the past, and if he believes that he is in apparent danger of great bodily harm at the hands of his enemy, he may shoot him down. We believe that, as a practical detail, the giving of the instruction authorized by the case of Oder v. Commonwealth is accepted by the average jury as meaning that, if one has been threatened or been assaulted in the past, when he meets his foe afterwards he may, without more ado, assassinate him. The principle enunciated is unsound, by every canon of the criminal law, and is unwarranted by any authority with which we are acquainted. All of the facts which the opinion authorizes to be placed in the instruction on self-defense are competent as evidence, to be weighed by the jury, in connection with all the other testimony adduced on the trial, in considering the defendant's plea of self-defense; but they have no place in this instruction, and, when placed there, are, as a rule, considered by the jury as warranting one in assassinating the enemy, who

may have previously threatened to do him violence. In so far as the case of Oder v. Commonwealth is inimical to the principle here laid down, it is overruled.

Appellant further complains of the closing speech of the Commonwealth's attorney. We have examined this speech carefully, and we do not believe that it contains anything which would warrant us in reversing this case. Some of the statements are exaggerated; some of the conclusions are overdrawn; but there is some evidence tending to support every statement made; and while the speech in question is florid in style, and quite zealous in seeking a conviction of appellant, on the whole we can not say it is substantially out of the line usually adopted by the Commonwealth's attorneys in criminal cases.

The evidence fully warranted the conclusion the jury reached. The killing of William S. Wright by appellant and his brother, John C. Reynolds, was admitted. The theory of appellant, that William S. Wright rode up behind him and his brother, who were walking along the road, each with a Winchester rifle in his hand, and that the deceased, seeing them thus armed, himself on horseback, with his pistol in a holster under his vest, attracted their attention by calling them vile names and telling them he was going to kill them—attacked them, under these circumstances, without first drawing his pistol—is a proposition which staggers even credulity itself. Every man of any experience is bound to know that it is exceedingly difficult, while mounted upon a restive horse, to use a pistol with any degree of accuracy; and for one mounted on a horse thus to attack two men on foot, each armed with a repeating Winchester rifle, would be, practically, to commit suicide. The jury heard this story of appellant, and they

rejected it as untrue. They believed from all the evidence in this case that appellant and his brother assassinated William S. Wright in cold blood.

For these reasons the judgment is affirmed.