## Thomas v. Commonwealth.

(Decided October 3, 1919.)

### Appeal from Harlan Circuit Court.

1. Criminal Law—Evdence of Other Crimes.—The general rule that evidence of other crimes is inadmissible upon the trial of a particular crime is subject to well recognized exceptions. Evidence of other crimes being admissible where it tends directly to prove defendant guilty of the crime charged or the motive, intention or knowledge, or when two or more crimes are so linked together in point of time and circumstances that one can not be fully shown without proving the other.

2. Criminal Law—Issues and Theories of Case in General.—Refusal to give tendered instruction, though correct, is not error when the substance of the instruction tendered is embraced in those given by the court.

3. Criminal Law—Appeal and Error.—The verdict of a properly instructed jury on the question of fact will not be interfered with upon appeal unless the mistake is so flagrantly against the evidence as to make it appear at first blush that the jury was influenced by passion or prejudice.

4. Criminal Law—Appeal and Error.—The evidence examined and found to support the verdict of a properly instructed jury, which found the appellant guilty of wilful murder and fixed his punishment at death.

HALL & JONES for appellant.

CHARLES H. MORRIS, Attorney General, and    OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellant was indicted for the wilful murder of Richard Johnson, and upon a trial was found guilty and his punishment fixed at death.

He was employed in the mines at Benham, Ky., in the capacity of a motorman, and on Sunday, April 6, 1919, the day of the killing, he had been with his wife to visit some relatives in the community. They started for their home about 6 o'clock in the evening; appellant stopped at the home of some foreigners and purchased four bottles of a substance called "julep," by some referred to as wine or cider; he continued his way towards home, but before reaching the house he stopped at a hydrant near by and talked to his brother-in-law; they drank some of the liquor; appellant then went home, where his wife served supper on the porch; after supper he went into the house and came out with a shotgun and said he was going over to inquire about his brother. He shot the gun once or twice in the yard and an effort was made to get the gun from him; he called at his father's home, and it was again attempted to get the gun, and this they succeeded in doing after struggling for an hour or more. In the meantime the appellant had been consuming more of the "julep" and had given of same to different friends. Deprived of his gun he endeavored to secure his brother-in-law's pistol, and this being refused him he upset practically everything in his brother-in-law's house, in his search for a weapon.

Appellant and his brother-in-law lived in the same building but in separate apartments. After he had been relieved of his gun he got into an altercation with his sister's husband, and tried to cut him with a knife, and when his sister endeavored to interfere he grabbed her by the hair and handled her rather roughly. As soon as the brother-in-law could extricate himself from the appellant he and his wife left home.

Dan Cain, who lived near appellant, had been to a church in the neighborhood; returning home he heard a great deal of noise in the direction of the Thomas house, such as the breaking of glass, and the screams of a woman. Being a friend of the family and not desiring to become involved in what he thought was a family disturbance, he decided he would report the matter to an officer. After

a time Cain located decedent, Richard Johnson, a deputy sheriff, and accompanied him to the scene of the trouble. It was dark at the time. Cain testifies that as they approached the Thomas house someone met them near a shed a short distance from the house, that Johnson started to speak but witness did not understand what he said, because at that time he (Johnson) was struck with some blunt instrument and fell; being unarmed Cain fled; while fleeing he heard something strike on a nearby rock, as if it had been thrown at him; he stopped and looked back, saw someone bending over Johnson and fearful that he might be killed he continued his flight and was twice fired upon. As soon as possible he summoned a number of men and they returned to the place of the shooting; after much searching they found the dead body of Johnson. Thomas was nowhere to be seen.

Thomas, after he had killed Johnson, went to the home of his father and also to one or two neighbors and at each of these places he endeavored to get some cartridges. This was somewhere near midnight. He offered one of these persons pay for the cartridges. When asked what he wanted with them he replied that he had killed a fellow—had killed Johnson—and when refused the cartridges he offered to give him a watch for some shells— the watch was that of Johnson. Appellant at the time not only had Johnson's watch but had his pistol, badge and money. Appellant stated to one of the witnesses something about not liking Johnson, or Johnson not liking him.

Appellant went to the home of a neighbor; while the latter was asleep he got nearly a whole box of cartridges off the mantel. This was about midnight.

Early the next morning appellant stated to another witness that he guessed there would be two fellows that never would arrest any one else.

Appellant was next seen, that same morning, on a train going in the direction of Pineville. There he met up with two officers and in attempting to arrest him one of the officers was killed and the other wounded.

Later during the day, which was the day following the tragedy, he was seen by the men who were looking for him and when they called upon him to surrender he sought shelter behind a pile of ties. Many shots were exchanged between appellant and members of the posse;

he finally surrendered and was taken to jail. He still had Johnson's watch and pistol and some of his money, and to some of these men he stated he had killed Johnson, to others he said he did not know who had been killed. Appellant did not testify upon the trial.

Counsel for appellant has asked that the case be reversed because the verdict is not authorized by the evidence, and because of improper instructions and misconduct of counsel for the Commonwealth in stating the case to the jury.

We will take these in their inverse order. The Commonwealth's attorney in his opening statement referred to the fact that appellant, besides killing Johnson, had killed another man and wounded a third, and it is insisted this argument was highly prejudicial, and such as entitled appellant to a new trial.

The general rule is that on the prosecution of a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime, wholly independent of that for which accused is being tried, is irrelevant and inadmissible. There are several well recognized exceptions to this rule, however, and these exceptions are founded on as much wisdom and justice as the rule itself. The general rule does not apply where the evidence of another crime tends directly to prove defendant's guilt of the crime charged. Evidence of other crimes is admissible to prove particular matters such as the identity of accused, also the motive, intention, or knowledge. Such evidence is likewise admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. 16 C. J. 586, et seq.; 8 R. C. L. (page 204); Morse v. Commonwealth, 129 Ky. 294; 111 S. W. 714.

There was no evidence before the jury as to the second killing, except that one of the witnesses in answer to a question by the Commonwealth's attorney made this answer:

"What did he say when he gave you the watch? A. He asked how many men he killed; we told him he killed two and shot another one."

And this answer was not objected to.

The theory of the appellant is that the concoction did not make him drunk but made him insane, and, therefore, he was not responsible for anything he may have done.

When we consider the circumstances surrounding the killing of Johnson, the taking of his pistol, badge, etc., appellant's flight, securing a supply of cartridges, state-ments made to different ones that night that he had killed Johnson, resisting the officers in their effort to arrest him, all occurring within the space of a few hours, and then his final effort to prevent arrest, we cannot say the remarks of the Commonwealth's attorney were improper.

Garman v. Commonwealth, 183 Ky. 455, 209 S. W. 528, is a case presenting facts quite similar to those here involved, especially on the question of the competency of evidence of other crime, and in speaking on this subject we said:

"When the commission of the act charged in the in-dictment is practically admitted by the accused, who seeks to avoid criminal responsibility therefor by rely-ing on a lack of intent or want of guilty knowledge, evi-dence of the commission by him of similar independent offenses before or after that upon which he is being tried, and having no apparent connection therewith, is admissi-ble to prove such intent or knowledge."

In said opinion will be found a discussion as to the admissibility of evidence of other crimes so close in point of time as to be practically inseparable.

It is claimed the court erred in refusing to give two tendered instructions. It is doubtful if appellant was entitled to the requested instructions, but instruction No. 6, given by the court, embodied, in substance, the theory presented. The court told the jury that although they might believe from the evidence, beyond a reasonable doubt, that appellant killed Johnson, yet if they further believed from the evidence that at the time of the killing the defendant was not voluntarily drunk, but was of un-sound mind from the effects of wine or other liquors which he did not know would affect his mental faculties, and that he was without sufficient reason to know what he was doing or had not sufficient reason to know right from wrong, or that as a result of mental unsoundness he had not sufficient will power to govern his actions by reason of some insane impulse which he could not resist or con-

trol, then he should be acquitted on the ground of insanity.

The refusal to give a tendered instruction, though correct, is not error when said instruction is substantially embraced in those given.

No complaint is made of the other instructions, which are in the usual form and include instructions on manslaughter and insanity.

Appellant insists there was no evidence to support the verdict of the jury, but with this contention we cannot agree. It is testified by some of the witnesses with whom appellant worked that he bore a good reputation. It is also shown that he did take a drink every now and then and had been drunk before. It is not denied that appellant killed Johnson, the defense being that he was rendered insane through the effect of the julep he drank. Appellant had the benefit not only of the usual instruction on insanity but of the special theory advanced by his counsel as covered by instruction No. 6. He did not leave his victim until he had taken from him his money, watch, badge and pistol. The latter he used quite extensively the next day. There is testimony he knew he had killed Johnson, and he made rather substantial preparations to defend himself that same night in the acquisition of a good supply of cartridges. Some of these he used with deadly effect upon another officer, and later held at bay a number of armed men seeking to capture him.

In Harris v. Commonwealth, 183 Ky. 542, a verdict imposing the death penalty was affirmed. There the defense was that from insanity or drunkenness or both the appellant did not knowingly commit the crime; that he had no recollection or knowledge of what he did for more than an hour before the killing, until some six or seven hours thereafter. The main contention in that case was the failure to give an instruction on voluntary manslaughter, the court holding the appellant was not entitled to such.

We have written in a number of cases that the verdict of a properly instructed jury on the question of fact will not be interfered with upon appeal unless the mistake is so flagrantly against the evidence as to make it appear, at first blush, that the jury was influenced by passion and prejudice. Ratcliff v. Commonwealth, 182 Ky. 247, and the cases therein referred to.

The courts must not encroach upon the province of the jury. The jury has found appellant guilty and fixed his punishment at death, but after a careful study of the record before us we cannot find any ground that would warrant us in setting aside the judgment appealed from.

The judgment is affirmed.

Whole court sitting.