## Ben and John Baker v. Commonwealth.

(Decided March 25, 1927.)

### Appeal from Madison Circuit Court.

1. Indictment and Information.—Indictment under Ky. Stats., section 1166, first charging defendants as principals and then charging each as principal, the others aiding and abetting in shooting and wounding, naming person shot at and one actually wounded, held to comply with requirements of Criminal Code of Practice, section 122, subsec. 2, providing that charge be made so that ordinary person might understand what was intended.

2. Indictment and Information.—Dismissing an indictment as to one of several defendants who were indicted together held not to constitute error, especially since objection was not made by appellants at that time.

3. Assault and Battery.—In trial for shooting and wounding under Ky. Stats., section 1166, question of defendants' guilt held for jury.

4. Criminal Law.—Instruction on self-defense in trial for shooting and wounding under Ky. Stats., section 1166, which seemed to assume that one or the other of appealing defendants was guilty, though erroneous, held not prejudicial, in view of other charges.

5. Assault and Battery.—Instruction in prosecution for shooting and wounding under Ky. Stats., section 1166, in effect that, if jury believed that either of defendants actually did the wounding, or aided or abetted the one who did do it, he should be acquitted if he acted in his necessary self-defense or that of the one who actually shot the victim, held not prejudicial as being misleading.

6. Criminal Law.—Instruction in trial for shooting and wounding under Ky. Stats., section 1166, on self-defense, authorizing an acquittal of either defendant if his participation in a shooting affray was in defense of the other, held not prejudicial, since it gave an additional ground upon which the defendants might be acquitted.

G. MURRAY SMITH for appellants.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The appellants, Ben and John Baker, together with one Will Baker were jointly indicted in the Madison circuit court and charged with one of the offenses denounced by section 1166 of our present statutes, i. e., willfully shooting at another without wounding, but wounding a third person who was not shot at, and upon their joint trial they were convicted and sentenced to confinement in the penitentiary for a term of two years each. Their motion for a new trial was overruled and they prosecute this appeal.

It is first argued that their demurrer to the indictment should have been sustained, but we have carefully examined it and find no merit in this contention. Subsection 2 of section 122 of the Criminal Code of Practice requires the charge to be made "in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." The indictment in this prosecution measures up to those requirements although it might not be considered as perfect in its grammar or rhetoric, and which are the two chief faults attempted to be pointed out in brief. Both of the defendants therein are first charged as principals, followed by counts charging each of them separately as a principal, and the others being present, aiding and abetting. The names of the person shot at and the one actually wounded are given, and defendants, though only of "common understanding," could well know what was intended.

Before entering upon the trial the commonwealth's attorney dismissed the indictment insofar as it applied to Will Baker, and an argument is made that it constituted error, but we are unable to follow such reasoning and have been cited to no case so holding. On the contrary, we know that such practice is common and universal. Besides, we fail to find anywhere in the record any objection made by the two appellants to the entry of that order.

It is next insisted that there should have been a peremptory instruction in favor of each defendant, and especially as to John Baker. That position is wholly unsupported by the record, since the evidence as a whole, as given by the witnesses, together with the proven cir-

cumstances, not only authorize a submission of the guilt
or innocence of defendants, but it fully justified the ver-
dict. Not only so, but our reading of the record convin-
ces us that scarcely any other verdict could have been
returned. The person shot at was Link Lakes, and the
one actually wounded was Joe Williams. It occurred at
Clay Lick voting precinct in Madison county, on the
regular November election in 1925. Defendants in the
indictment and their nephew, Whit Purvis, with others,
the most of whom had gone there together in a wagon,
were supposed to be legal voters at that precinct, al-
though John Baker lived in Rockcastle county, a short
distance from the line between it and Madison county.
Whit Purvis had not lived regularly in the precinct and
Link Lakes challenged his vote, which the officers of the
election sustained, and he became exceedingly angry and
proceeded to direct some profane and threatening re-
marks to his challenger. At the same time he drew a
pistol which the latter requested him to ''put up,'' since
the house in which the voting was done was surrounded
by voters both male and female. The two engaged in a
war of words and assumed a threatening attitude towards
each other, and about that time the shooting commenced,
with the two convicted defendants actively participating.
Lakes, during the shooting, was between defendants and
the house in which the voting was done and Williams, the
person who was wounded, was in that house for the pur-
pose of casting his vote, when he was struck by a bullet
from the pistol of one or the other of the convicted de-
fendants, they both shooting in the direction of the house
and where Williams was located. The great preponder-
ance of the evidence (and in fact practically all of it, ex-
cept that given by the defendants themselves) was to the
effect that Purvis drew his pistol before Lakes drew his
and that each of the Bakers shot before anyone else did.
It is also proven that Ben Baker, as he went to the polls
on that day with John Baker and others, stopped at a
country store and procured some cartridges for his pis-
tol, but he says that he did not do so in the morning as
he went to the polls, but in the afternoon when he was
returning home. We repeat, however, that his testimony
on that point is overwhelmingly contradicted. Purvis,
according to the proof, had been denied the right to vote
in that precinct at some previous election or elections,
and he was under the impression that it was due to the
activities and interferences of Lakes, and the evidence is

sufficient to infer that he and his uncles had discussed that matter before they went to the polling place on the day the shooting occurred, also the significant fact appears that each of them was armed and ready for action if a propitious occasion arose.

But it is said that the peremptory instruction in any event should have been given in favor of John Baker, since it was proven that he had a No. 38 pistol and his brother Ben had a No. 45, and that the wound inflicted on Williams was with a bullet of the latter caliber, and that both defendants testified that they were not aiding or assisting each other, but each of them was independently defending himself from Lakes, whom they say first shot at them. Williams received a flesh wound in some part of one of his legs, and one witness testified that he thought the wound was inflicted by a bullet as large as a 45 caliber pistol. He did not positively testify that it was so done, and his evidence is all there is in the record from which to conclude, as does counsel, that John Baker, who was using a No. 38 pistol, did not inflict the wound. The assumption of counsel, which has for its basis the uncertain testimony referred to, is not sufficient to support his contention. But, if it were otherwise, then John Baker would be guilty if he was present, aiding and abetting his brother Ben, unless the latter was justified in doing the shooting he did. The instructions of the court are also complained of, and one of the arguments against them so far as John Baker is concerned is that he should have had a peremptory instruction in his favor, and which we have hereinbefore discussed. It is based entirely upon the theory that it is conclusively proven that John Baker's pistol did not inflict the wound on Williams for the reason above referred to and that he was not aiding and abetting his brother Ben.

Instruction No. 2 was the one on the right of self-defense, and as drawn it seems to assume that one or the other of the two appealing defendants shot at Link Lakes and wounded Joe Williams. There was not inserted in it the qualifying clause, "if the jury believe beyond reasonable doubt that either of them did do so," and serious complaint is made of it because of that omission. If there were no other instructions in the case correctly submitting the issue of defendants' engaging in the shooting and wounding of Williams the objection to instruction No. 2 would be fatal; especially if there was other

evidence in the case that some other person may have wounded Williams. But in this case there is no such testimony, since there can be no doubt that he was wounded by a shot from the pistol of either Ben or John Baker. Other instructions in the case, as well as the reasonable doubt one, told the jury that unless they believed defendants were guilty beyond a reasonable doubt they should each be acquitted.

In view of the rule, expressly enacted by the Criminal Code of Practice and continuously followed by this court, that no error will authorize a reversal of the judgment unless it is prejudicial to the substantial rights of defendant, we are compelled to conclude that this objection to instruction No. 2 is not alone sufficient to authorize a reversal of the judgment. Besides, similar objections have been urged before us in numerous prior cases under similar facts without avail.

The first part of the instruction now under consideration said:

"If the jury believe from the evidence that the defendants or either of them, at the time either one or both of them shot at Link Lakes and wounded Joe Williams, or at a time when either one of said defendants shot at Link Lakes and wounded Joe Williams and the other was present aiding and abetting such shooting, believed and had reasonable grounds to believe that they or either of them was then and there in immediate danger of death or great bodily harm at the hands of Lakes," &c.

That language is not as clear as it could have been made, but it, in substance, told the jury that if either one of the defendants shot at Link Lakes and wounded Joe Williams and at the time he believed and had reasonable grounds to believe, etc., or if either defendant, though not doing the shooting was then and there present and aiding and abetting the other one who did do it, and who also had reasonable grounds to believe, etc., then each defendant or the one so believing should be acquitted, on the ground of self-defense. The criticism at best is technical and it requires an astute person in analysis of language to detect the adverse construction against the interest of defendants for which counsel contends. To our minds, the average juror could have no trouble in concluding from the language of the instruction that, al-

though he, as a juror, believed from the evidence that either of the defendants actually did the wounding of Williams, or aided or abetted the one who did do it, he should be acquitted if he acted in his necessary self-defense, or that of the one who actually shot him, as so outlined in the instruction.

Lastly, it is insisted that the self-defense instruction was erroneous because it authorized an acquittal of either defendant if his participation in the difficulty was in defense of the other one, and which argument is based upon the conclusion of counsel that they both testified that they were each acting in their individual right of self-defense without the knowledge that the other one was in peril. Clearly, that criticism could not possibly be prejudicial, even if supported by the evidence, since it gave an additional ground upon which defendants might be acquitted.

Upon the whole record we are convinced that defendants had a fair and impartial trial, and the judgment is affirmed.