## Turner v. Commonwealth.

(Decided January 25, 1929.)

M. G. COLSON for appellant.

J. W. CAMMACK, Attorney General (DOUGLAS C. VEST, of counsel), for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant was convicted of the offense of voluntary manslaughter, and sentenced to serve ten years in the penitentiary. He appeals from the judgment.

The first ground relied upon for reversal is that the verdict is flagrantly against the evidence. The proof of the commonwealth established that the deceased, John Mullinax, had some time prior to his death been in a shooting affray, in which he was so severely wounded that his left arm was practically useless, and the rest of his body was in a very crippled condition. He owned a little farm in Bell county, and lived by himself in a little house on that farm. The appellant, a good friend of his, lived alone in the very near vicinity, and he had arrangements to take his meals with the appellant. A short time prior to the day of the homicide, Mullinax borrowed $150 from his brother for the purpose of paying taxes and discharging some other obligations he had. After the homicide, this money was never found, and the taxes and debts to pay which it had been borrowed remained undischarged.

On the morning of the homicide, the appellant bought an old shotgun, and later appeared at a general store in the neighborhood for the purpose of purchasing some shells containing No. 3 shot. He displayed a $10 bill, which he told the storekeeper Mullinax had given him in order to pay for the shells. The storekeeper did not have the shells. Later on in the afternoon the appellant got a friend who was on his way to Middlesboro to bring him back that day six shells. On the morning of the homicide Mullinax was engaged in plowing a hillside and planting some watermelon seed. He was assisted by a young boy, who testified that just before noon, when a

rainstorm came up, he went to the house of the appellant, and there in the yard back of the kitchen cut up a lot of wood, leaving the hatchet in the chopping block. About 6 o'clock that evening, when appellant and Mullinax were alone eating supper in appellant's home, a shot was heard to ring out from that place. Some commonwealth witnesses testified that they looked over towards appellant's home, and saw him come out of the kitchen, and bend over as if picking something up. He then returned to the house, and then came out again. When he first came out he had no gun in his hand. The house of appellant contained three rooms, a front room which opened into a middle room, used as the dining room, which in turn opened into a kitchen behind it. When the neighbors got to the house, they found Mullinax lying dead on the floor in the front room, his crippled arm bent under him. His other arm was stretched out to the side, and about a foot from it lay the hatchet. One witness testified that flecks of old wood were on the blade of the hatchet, and that there was no blood upon it. The right eye of Mullinax was shot out, and his nose was shot in two. At the time he was shot, he was evidently eating his supper, for, when the undertaker arrived, he had to remove some food from the mouth of Mullinax. Immediately after the homicide, the appellant went to the county seat, and surrendered to the jailer. At the time he surrendered, he had a wound upon his check, from which some blood was flowing. The evidence of the commonwealth tends to show that the wound was superficial, and that a pocketknife which the appellant had upon him had blood upon its blade.

The evidence for the appellant is to the effect that he and Mullinax were good friends; that he bought the shotgun and the shells for the purpose of killing rabbits which were destroying some fruit trees on the farm of Mullinax. We may say in passing that the size of the shot is not that usually procured for such purpose. Appellant denied that he had any $10 bill at the general store the morning of the homicide when he tried to purchase shells. On the contrary, he claimed that he had no money whatever on that day, except 50 cents, and that Mullinax had given him $2 to add to this 50 cents in order to enable him to buy the shotgun for that sum.

He further testified that he and Mullinax were eating their evening meal, that he arose to go out into the kitchen for some purpose, and that, as he started out,

he told Mullinax, who was somewhat hard of hearing, that there was a rumor in the neighborhood to the effect that a hog which Mullinax had recently sold was a stolen hog. Thereupon, as appellant claimed, Mullinax in high anger jumped from the table, and with the hatchet in his hand drove the appellant into the front room, and that, to save his life, he grabbed the shotgun, which was sitting in the front room, and killed Mullinax. Appellant stated that he had brought the hatchet in from the yard that afternoon in order to chop up some kindling wood, since the wood in the yard was wet from the rain, and that he left the hatchet in the kitchen. Appellant admitted coming out of the house and then going back into it, and then coming out again, but said that the reason he returned to the house was that he forgot his hat and that he went back after it. He claimed to have carried the gun both times he left the house. He also claimed that the wound upon his face was a very severe one, and that it was caused by Mullinax hitting him with the hatchet.

From this resume of the evidence it is clear that the case was one for the jury, for, if the proof of the commonwealth be believed, there was substantial evidence tending to show that the appellant, after he had killed Mullinax, went out into the yard, secured the hatchet, and planted it near the body of the deceased. Further, the condition of the hatchet established that the wounds on appellant's face were not occasioned by it, and the other proof tended to show that these wounds were self-inflicted by means of appellant's knife. When considered as a whole, there was ample evidence to refute appellant's contention that he killed Mullinax in his necessary self-defense, and it cannot be said that the verdict of the jury on this question was flagrantly against the evidence.

It is next urged that this case was tried at Pineville over appellant's objection and in spite of his request that it be tried at Middlesboro, where, as he says, under the statute governing the place of trial of criminal causes in counties where more than one courthouse is authorized, this case should have been tried. But the very statute upon which the appellant relies also provides that it shall not be ground for an appeal or reversal that any case was tried at one place in the county when it should have been tried at the other place in that county. Kentucky Statutes, sec. 963d-1 and Ky. St. Supp. 1928, sec. 963f-1.

Appellant next contends that the court erred in failing to give an instruction on involuntary manslaughter and accidental killing. He relies on that line of cases where we have held that, if the case rests entirely on circumstantial evidence, it then devolves on the court to give instructions on every phase which the case might present. See Rutherford v. Commonwealth, 13 Bush, 608. In Frasure v. Commonwealth, 169 Ky. 620, 185 S. W. 146, the limitations of this principle were set out with full discussion and elaboration. We there said that, where the record left room for no theory other than murder or innocence, it was not necessary to instruct on manslaughter or self-defense. In Harris v. Commonwealth, 214 Ky. 787, 283 S. W. 1063, the defendant took the stand, and undertook to tell how the homicide occurred. In view of his testimony, we held that it was unnecessary for the court to instruct on the theories of manslaughter or self-defense, although the evidence of the commonwealth was only circumstantial. Cf. Brannon v. Commonwealth, 215 Ky. 589, 286 S. W. 785. In the instant case, the appellant testified and gave his version of how this homicide came about. In the light of his testimony, there was no reason for an instruction either on involuntary manslaughter or accidental killing, and the court did not err in declining to so instruct.

Appellant next complains of the instruction on self-defense and reasonable doubt. The form of both of them has heretofore been approved by this court. As to the self-defense instruction, it was not necessary, as appellant argues, for the court to call the jury's attention to the particular facts upon which appellant relied to establish his right to self-defense. On the contrary, in Howard v. Commonwealth, 202 Ky. 711, 261 S. W. 246, we said:

"We have repeatedly condemned such an instruction, and stressed the importance of giving an instruction on self-defense in the usual form, thus leaving the question to be determined by the jury in the light of all the facts and circumstances in the case rather than in the light of certain particular facts, whether relied on by the commonwealth or the accused. Williams v. Com., 9 Bush, 274; Reynolds v. Com., 114 Ky. 912, 72 S. W. 277, 24 Ky. Law Rep. 1742; Com. v. Thomas, 104 S. W. 326, 31 Ky. Law Rep. 899; Heck v. Com., 163 Ky. 518, 174 S. W. 19; Hobson, Blain & Caldwell's Instructions to Juries,

sec. 661; Chilton v. Com., 170 Ky. 491, 186 S. W. 191, Ann. Cas. 1918B, 851.''

Appellant next argues that it was error for the court to admit in evidence certain admissions made by the appellant out of court, because, as he says, this violated his constitutional privilege against self-incrimination. Constitution, sec. 11. The sincerity with which appellant argues this ground is the only excuse meriting its consideration. Of course, this constitutional privilege means that one accused cannot be compelled to give testimony against himself. It does not cover the case where the accused voluntarily makes admissions in or out of court.

Lastly, appellant contends that he was entitled to a new trial on the ground of newly discovered evidence. Waiving the question of diligence, we are unable to see how the newly discovered evidence, which was to the effect that on the day following the homicide a still was found in appellant's house, had the remotest bearing on any issue in this case.

No error prejudicial to appellant's substantial rights appearing, the judgment is affirmed.