## Marcum v. Commonwealth.

(Decided May 1, 1934.)

T. C. CARROLL, C. P. BRADBURY and BRENT OVERSTREET for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, George Marcum, was indicted by the Bullitt county grand jury for the murder of his wife, Molly Marcum. He was tried, convicted for voluntary manslaughter, and sentenced to confinement in the penitentiary for a period of fourteen years. He appeals.

The record discloses that appellant was about 70 years of age and his wife a few years his senior, and

lived on their farm in Bullitt county. On September 24, 1933, a man named Calvert called at defendant's home for the purpose of delivering some ice. The deceased, Mrs. Marcum, came to the door holding her hand over her face and appeared to be crying and said to Calvert, "Mister—" At this point and before she finished her statement, appellant shoved her back into the room. Calvert turned and went back toward his truck, and the deceased again appeared at the door and said: "Mister, send the officers down here quick." Calvert replied that he could not interfere with other people's business, and about the time he stepped into the truck and started away he heard a shot fired and a woman scream, and in about one-half minute he heard another shot fired, but he continued toward Lebanon Junction, where he notified J. W. McNaulty, the town marshal, of what had occurred at the Marcum home. McNaulty immediately went to the Marcum home, and on arriving there about 7 o'clock a. m. he found Mrs. Marcum lying on the floor dead. Near her body were found a shotgun and two empty shells bearing evidence of having been recently fired. Her body also showed bruises and other injuries in addition to the wounds inflicted by the shots. The appellant was absent at that time and not located until several days thereafter, when he was found in the woods in Green county. The officers testified that when they arrested him he begged them to kill him, and said that they had just as well kill him as to take him back and let a jury kill him. He made the further statement that he killed his wife but that he did not know why he did so.

Appellant did not specifically deny that he killed his wife, but claims that his mind was blank and that he did not know whether or not he did kill her. According to the evidence of appellant, he and the deceased had been getting along very badly for a number of years. He claimed that she constantly nagged and quarreled at him and cruelly treated him. He related what occurred on the morning of the tragedy as follows: He got up about daylight, and was so worried and disturbed that he could not sleep. His wife told him to go back to bed or lie down, and he did so and attempted to put his arms around her to love her a little, and she told him not to touch her, that she could not rest when he was touching her and knocked his arm off and turned her back to him; that he was heartbroken and said: "Molly, why can't

you throw that old Pat Sumner down and take care of your home?" And she responded: "Home? Who ever seen anything that you ever had that looked like a home—you are supposed to be dead anyway." He stated that he was very much grieved over this conduct on her part and that he dressed and started out to feed the hogs, feeling like he had been cast aside in the world without any one to love or care for him except his little dog; that a short time later he came into the house with some stove wood, and, as he laid it down, the deceased picked up a stick of the wood and said: "You old devil you, I will split your head open." And they got into a scuffle and he never knew anything any more at all. He stated that from that time on until he found himself sitting in his automobile in the front yard he remembered nothing, did not recall shooting the deceased, if he did so, or any circumstances surrounding the same except as above stated, and that his mind was a complete blank during that interval of time.

It is urged as ground for reversal that the court erred in admitting to the jury incompetent and irrelevant testimony. On cross-examination of appellant the commonwealth's attorney asked him if his nephew, Archie Marcum, was not over there (appellant's house) making liquor. Appellant answered:

"I did myself."

"Q. That was your still? A. Yes, sir.

"Q. Did your wife object to that? A. No, sir, my wife never objected to liquor in any form."

Appellant was further asked if he was not drunk at the time he killed his wife and if that was what the argument came up over. He answered this question in the negative. A number of other questions along the same line was asked about the whisky and still, among which appears this question and answer:

"Q. When she started to call the officers I will ask you if you didn't know that that still was there in the house and that if the officers came down there and found that still you would have to go to jail and that so infuriated you that you just went and got the gun and shot her, isn't that the reason you killed her? A. I wasn't drunk.

"Q. Wasn't that why she was calling the of-

ficers and that you didn't want her to call the officers because you knew what they would find there when they came and wasn't that the big reason for your killing your wife? A. She never objected to whisky in any form. * * *

"Q. Would you have killed your wife if she hadn't threatened to call the officers down there and you knew that the officers would find this still and other things that would cost you money, do you think you would have killed her if it hadn't been for that?"

The objections urged to the above line of testimony is that it was proof of an offense not included in the indictment for which appellant was being tried.

The general rule is that evidence of offenses other than the one for which a person is charged is inadmissible. However, there are exceptions to this rule, viz. (1) the identity; (2) motive; (3) intent; (4) guilty knowledge; (5) plan, system, or scheme of perpetrating crime; (6) to cover up previous crime or the evidence of a crime for which he is being tried; (7) or a crime, the proof of which is so interwoven as to be inseparable from the crime for which he is being tried that the evidence of the two acts cannot be separated. It is true that commonwealth's attorney did not use the word "motive," but instead he used the word "reason," which is an alternative or synonym for motive in the circumstances it was used. The form of the questions complained of is such that the jury could and, no doubt did, understand the purpose of the evidence, i. e., the motive tending to impel or move appellant to kill deceased. To establish or prove the motive it was necessary to show the facts and attendant circumstances, the proof of which is so interwoven as to be inseparable from the crime for which he was being tried that the evidence of the two acts could not be separated. Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724, and cases therein cited; Welch v. Commonwealth, 108 S. W. 863, 33 Ky. Law Rep. 51; Thomas v. Com., 185 Ky. 226, 214 S. W. 929; Greenwell v. Com., 125 Ky. 192, 100 S. W. 852, 30 Ky. Law Rep. 1282; Carsner v. Com., 196 Ky. 560, 245 S. W. 155.

It is further argued that the court erred in failing to admonish the jury of the purpose of such testimony. It may be conceded without deciding, that the rule is

that the court should admonish the jury, explaining to it the purpose of such testimony and that it should not be considered for any other purpose. Conceding without deciding that the court technically erred in failing to do so in the instant case, yet it is our view that the error was not substantially prejudicial or sufficient to warrant a reversal. In Roop v. Commonwealth, 201 Ky. 834, 258 S. W. 667, 669, in speaking of the court's duty to admonish the jury as to the purpose and effect of certain testimony, we said:

"Hence we feel the court erred in not admonishing the jury as to the purpose thereof; but a reversal will not be and should not be directed because of this error, unless under all the circumstances it is plainly and clearly prejudicial to the substantial rights of the defendant. Johnston v. Commonwealth, 170 Ky. 766, 186 S. W. 655; Hayes v. Commonwealth, 171 Ky. 291, 188 S. W. 415; Day v. Commonwealth, 173 Ky. 269, 191 S. W. 105; Renaker v. Commonwealth, 172 Ky. 714, 189 S. W. 928; McDaniel v. Commonwealth, 185 Ky. 608, 215 S. W. 544."

It is our conclusion that under the circumstances in the instant case, the failure of the court to admonish the jury with respect to the purpose of the testimony complained of is not sufficient to warrant a reversal of this case.

It is further insisted that, even though it was proper to show the commission of other offenses, such fact should have been proved by other witnesses and not by the defendant on cross-examination. This contention is supported by the general rule and particularly so when a defendant is required to give such testimony over his objections. With respect to the still and whisky alleged to have been in appellant's house, the attorney for the commonwealth first asked defendant "if Archie Marcum, a moonshiner of long standing, wasn't over there making liquor for you." The court sustained defendant's objections to the above question. The court's ruling was proper because the defendant was asked to state whether or not Archie Marcum was making liquor for him (defendant). Later the attorney for the commonwealth asked defendant this question: "Archie had a still right there in your house making liquor, didn't he?" Answer: "I did myself." It will

be observed that in the last question defendant was not asked whether or not he had any connection with the whisky. He was merely asked if Archie Marcum was making whisky, and he voluntarily answered, "I did myself." If defendant had been required to state whether or not he had a still in his house and making whisky, a different case would have been presented. But after voluntarily stating that it was his still and whisky, he cannot now complain or take advantage of his own voluntary statement. He thereby waived his right of immunity. Turner v. Commonwealth, 227 Ky. 520, 13 S. W. (2d) 533.

It is insisted for appellant that the trial court erred in the giving of instruction No. 3, which reads as follows:

"Although the defendant, George Marcum, did shoot and kill Molly Marcum with a shotgun, yet if the jury believe from the evidence that at the time he did so he believed and had reasonable grounds to believe he was then and there in danger of death or great bodily harm at the hands of said Molly Marcum, and that it was necessary, or appeared to the defendant in the exercise of a reasonable judgment to be necessary to so shoot said Molly Marcum in order to avert such danger to himself at the hands of said Molly Marcum, danger real or to the defendant apparent, then you should find him not guilty on the ground of self-defense."

It is argued that by this instruction it is assumed that appellant did shoot and kill the deceased. This argument is based on the failure of the instruction to state that "if the jury believe from the evidence beyond reasonable doubt that he did commit the offense, etc.", whereas the instruction says "although the defendant did shoot and kill Molly Marcum." It must be conceded that this was technical error, but it is an elementary and well-settled rule that all the instructions given by the court must be considered together in determining whether there was error in any of them, as an omission in one may be supplied by another. Connor v. Commonwealth, 118 Ky. 497, 81 S. W. 259, 26 Ky. Law Rep. 398. Instructions Nos. 1, 2, 4, and 6 all contain the clause relating to the evidence, the omission of which is complained of in No. 3. If there were no other instructions in the case correctly containing the qualifying clause (if the jury believe from the evidence beyond

reasonable doubt that he committed the act, etc.), the objections to the instructions would be fatal. Baker v. Commonwealh, 219 Ky. 834, 294 S. W. 790. It is our view that the error complained of in instruction No. 3 was cured by the other instructions given.

It would require a far stretch of the imagination to conclude that the jury overlooked or ignored all the other instructions which specifically required them to "believe from the evidence beyond reasonable doubt that the appellant killed the deceased," and seized upon the omission of such language in instruction No. 3 as the only ground for conviction. In view of the rule that no error will authorize a reversal of the judgment in either a criminal or civil case, unless it is prejudicial to the substantial rights of the complaining party, impels us to conclude that the objections to instruction No. 3 are not alone sufficient to authorize a reversal of the judgment. Baker v. Commonwealth, supra.

It is lastly insisted for appellant that the trial court erred in failing to give an instruction on accidental killing, and therefore failed to give the whole law of the case. It is argued that the evidence is circumstantial only, and in such cases the court should have given an instruction covering all phases of homicide. We cannot agree with appellant that the evidence is merely circumstantial in the ordinary acceptance of that term. The evidence of the witness Calvert and the uncontradicted statements of the officers who arrested appellant, that he admitted that he killed his wife but only said that he did not know why he did so, taken together with appellant's own testimony, leaves no reasonable doubt that appellant did the killing. In defendant's own testimony the only defenses offered are self-defense and insanity. There is no plea of accidental killing, nor does the proven facts and circumstances warrant such inference or conclusion.

It has often been said by this court that a treatise, abstract, or analysis of the whole law of homicide should not be given in every case, but only so much of the law as applies to the facts of the case under investigation. In Madison v. Commonwealth, 17 S. W. 164, 165, 13 Ky. Law Rep. 313, the court, quoting with approval from the opinion in Rutherford v. Commonwealth, 13 Bush, 608, said:

"It was not proper to give any instruction on the

subject of involuntary manslaughter \* \* \* for the evidence does not actually or inferentially show a condition authorizing such instruction."

In Mackey v. Commonwealth, 80 Ky. 345, 4 Ky. Law Rep. 179, the court said:

"It is true this court has held that it is the trial court's duty, whether asked to do so or not, to fully instruct the jury in all of the law of the case. Yet it never has been decided that a routine of instructions, regardless of their applicability to the facts of the case, should be given."

In determining the law of a case for the purpose of instructions, the evidence and all attendant circumstances will be taken into consideration, and the failure to give an instruction not warranted by the proven facts and attendant circumstances is not prejudicial.

Under the proven facts and circumstances of this case, we do not think that an instruction on accidental killing was necessary, and the giving of such instruction could have served no purpose.

Perceiving no error in the record prejudicial to the substantial rights of the defendant, the judgment is affirmed.

The whole court sitting, except Thomas, J.