## Peck v. Commonwealth.

May 2, 1941.

348

Roy G. Garrison and Jack E. Fisher for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellant was convicted of the crime of "armed robbery" and sentenced to imprisonment for life. His victim was F. D. Cunningham, the proprietor of a store on the Mayfield Road near Paducah, who testified that he had been forced to enter a car operated by appellant and a woman companion, driven to a point about a mile away from his store and allowed to leave the car upon surrendering to appellant the money on his person amounting to approximately $50. His entrance into the

car was compelled by appellant's act in pressing a pistol into his side after he had filled the tank with gasoline and approached the door of the car to receive payment. The woman was at the wheel and Cunningham sat beside her, the appellant taking the back seat. After the car had been started, Cunningham, according to his testimony, said: "I know what you are after, this is a stickup, you can have my money, but there is no need to carry me a long distance out in the country and make me walk back."

It does not appear that appellant displayed or used his pistol after his victim entered the car, and because of this fact, it is argued that the robbery, which took place just before the victim was put out of the car, was not accomplished or accompanied by the use or display of a deadly weapon. Obviously, this contention is without merit, since the Statute, Section 1159a, denouncing the offense of which the appellant was convicted, does not require as an element of guilt that the deadly weapon with which the robbery is accompanied or accomplished, be pointed at or pressed against the victim during any specified period of time. It is sufficient that the deadly weapon be displayed or referred to by the accused in such a manner as to convey a threat of its employment upon the victim if he offers resistance or fails to obey the commands of the accused. Hence, appellant was not entitled to an instruction on robbery unaccompanied by the display of a deadly weapon.

The second ground for a reversal, namely, that the Court admitted incompetent testimony, is of more substantial import, and necessitates a more detailed reference to the testimony. Appellant's woman companion, Peggy Foster, was an inmate of a house of prostitution, and during the afternoon of the day on which the crime was committed, Friday, and the remainder of the night after it was committed, visited several places in and about Paducah in company with appellant and some of his other associates. On the following Saturday, the party, including a passenger whom appellant was transporting to Detroit for hire, left Paducah for that City in appellant's car, and, after arriving there, the appellant and Peggy Foster held up and robbed the proprietor of a gasoline station. This fact was first alluded to during the examination of Cunningham when he was asked the following question:

"Q. I will ask you if the occasion for your waiting was not, that you were notified to come down here when his time would be up in the penitentiary in Michigan, that they wanted him back here."

The question was objected to but the witness was permitted to answer. Introduced as a witness by the Commonwealth, the woman referred to, not only fully corroborated Cunningham's account of the robbery for which appellant was being tried, but was permitted to testify to the details above enumerated including the robbery in Detroit, and that she had returned to Kentucky on parole from a penitentiary sentence imposed upon her for her participation in that robbery. Appellant admitted his association with the woman during the afternoon of the robbery near Paducah and his subsequent trip in her company to Detroit, but denied any participation in or knowledge of the Cunningham robbery. However, he was compelled to admit his participation in the Detroit robbery during the cross-examination from which we quote the following:

"Q. Have you ever been convicted of a felony? A. Yes Sir.

"Q. What was it? (Objected to by attorney for Defendant. Objection overruled by the Court. Exception by attorney for Defendant.) A. Robber under arms.

"By the Court: That can only be used for the purpose of affecting the credibility of the witness and not for any other purpose.

"Q. When did it happen? (Objection by attorney for Defendant. Objection overruled by the Court. Exception by Attorney for Defendant.) A. What.

"Q. That robbery? A. It happened on Sunday morning about four o'clock.

"Q. The Sunday after you left here with this group of people on Saturday? (Objection by Attorney for Defendant. Objection overruled by the Court. Exception by Attorney for Defendant.) A. Yes sir.

"Q. Were you tried for that? (Objection by Attorney for Defendant. Objection sustained by

the Court. Exception by Attorney for Commonwealth.)

"Q. Were you sent to the penitentiary for this robbery? (Objection by Attorney for Defendant. Objection overruled by the Court.) A. Yes I was.

"By the Court: That can only be used for the purpose of contradicting or impeaching the witness and not for any other purpose.

"Q. Who else participated in this robbery? (Objected by Attorney for Defendant. Objection by the Court overruled. Exception by Attorney for Defendant.) A. Do I have to answer that question.

"Q. Yes. A. Peggy Foster.

"Q. She is the same girl who testified here against you? A. That is right."

At the conclusion of all of the testimony, in response to a motion of appellant's counsel to exclude the evidence regarding the robbery in Detroit, he Court admonished the jury that the evidence could not be considered as substantive evidence "unless you shall believe from the evidence that the commission of said offense, if such there was, was a part of a plan or system of criminal action."

There can be no doubt as to the force and effect of the testimony that two days after committing the robbery near Paducah, the appellant, in company with the same woman in the same car, and presumably with the same gun, committed a similar robbery in Detroit. It is true that Cunningham positively identified appellant as the man who robbed him, and that the testimony by which appellant attempted to prove an alibi was far from satisfactory. Nevertheless, two previously impanelled juries had failed to agree on appellant's guilt. Apparently, this was before the testimony concerning the Detroit robbery was discovered or available; but, be this as it may, the testimony that appellant had robbed a gasoline station in Detroit under the circumstances indicated, was extremely damaging to the appellant's defense, and if it was incompetent, the error of the Court in admitting it was prejudicial to appellant's substantial rights. Section 597, Civil Code of Practice,

the provisions of which are applicable to criminal trials, expressly prohibits the impeachment of a witness by evidence of particular wrongful acts, except that it may be shown that the witness has been convicted of a felony. These protective provisions inure to the benefit of a party as well as a witness, and it has long been the law of this State that only under exceptional circumstances may other crimes committed by an accused be proven against him when on trial for a distinct and separate offense. Sullivan v. Com., 158 Ky. 536, 165 S. W. 696; Brashear v. Commonwealth, 178 Ky. 492, 199 S. W. 21; Music v. Commonwealth, 186 Ky. 45, 216 S. W. 116; Kirby v. Commonwealth, 206 Ky. 535, 267 S. W. 1094; Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724; Marcum v. Commonwealth, 254 Ky. 120, 71 S. W. (2d) 17; Kesterson v. Commonwealth, 254 Ky. 287, 71 S. W. (2d) 622; Conley v. Commonwealth, 273 Ky. 486, 117 S. W. (2d) 189; Butler v. Commonwealth, 284 Ky. 276, 144 S. W. (2d) 510. From a perusal of these cases it will be seen that the exceptions to the rule prohibiting the proof of other crimes committed by the accused are not broad enough to make competent the testimony in the case before us that appellant after committing the robbery in Kentucky committed a similar robbery in Michigan.

Included in the exceptions to the general rule precluding testimony of the commission by the accused of crimes other than the crime for which he is being tried, is testimony necessary to identify the accused as the perpetrator of the crime charged and testimony of a course of conduct, plan, or system pursued by him of which the crime charged is a component part; and it is argued by the Commonwealth that the testimony complained of in the case at bar is within both of the exceptions alluded to. But there was no testimony indicating that appellant had planned a trip to Detroit or elsewhere for the purpose of committing a robbery, or that he went there for any other purpose than to carry a passenger and entertain his associates, or that the commission of the crime in Detroit was other than an afterthought. Had appellant committed a similar robbery by similar means at a point near Cunningham's store during the same afternoon or night, testimony showing that fact might have been competent if it had been necessary for the Commonwealth to introduce it in order to estab-

lish appellant's identity as the perpetrator of the Cunningham robbery, since robberies of that particular type are not of such frequent occurrence in isolated districts as to exclude the inference that those closely related in time, circumstance, and space, were committed by the same individual. Smallwood v. Commonwealth, 200 Ky. 582, 255 S. W. 106. However, to hold that the commission of a robbery by the accused some days later at a place more than four hundred miles distant constituted evidence identifying him as the perpetrator of the previous robbery, would be tantamount to abolishing the rule which prohibits proof of other crimes, and would make such proof competent in all cases where the several offenses were committed by the same means. Undeniably, the fact that appellant robbed a filling station in Detroit shortly after arriving there in company with the woman who testified that they jointly had robbed Cunningham, creates a strong suspicion that appellant was guilty of the latter crime. Considered in connection with the identification of appellant by Cunningham, there remains little doubt of appellant's guilt. Thus, it may be argued that it is expedient to uphold appellant's conviction. But precedent, protective of individual rights, should not be lightly cast aside, even to serve the commendable ends of government, unless we are prepared to adopt the view pressed by ultra modern theorists that such rights should be enforceable by the courts only when asserted against individuals. We have not reached that stage of pseudo progress, and accordingly, are constrained to reverse the judgment. It is so ordered.