## Gamble v. Commonwealth.

(Decided December 20, 1912).

## Appeal from Marion Circuit Court.

1. Evidence—When Incompetent Evidence Cannot Be Complained of—Criminal Law—Rape.—Where a defendant in a criminal prosecution brings out incompetent testimony upon cross-examination, he cannot complain of its incompetency.
2. Instructions—Should Not Be Given Without Evidence to Sustain.—The court should not give an instruction upon a theory of the case that is without evidence to sustain it.

. A. RUSSELL for appellant.

JAMES GARNETT, Attorney General, and D. O. MYATT for Commonwealth.

Opinion of the Court by Judge Miller—Affirming.

The appellant, Harry Gamble, was convicted of rape, committed on his stepdaughter, Catherine Smith, age 14, and given an indeterminate sentence of confinement in the penitentiary from 10 to 20 years, at hard labor. He appeals and alleges four grounds for reversal.

1. He insists that incompetent testimony was admitted, over his objection. The crime of which appellant was convicted is alleged to have been committed in February, 1912, in the barn of John W. Mouser, where appellant and Catherine Smith were bulking tobacco. She did not tell any one at the time, but when she was asked, upon cross-examination by appellant's attorney, as to when she told her mother of the assault, she answered that she told her mother immediately after Gamble had committed a second assault upon her a few weeks later. Appellant insists that the latter part of this answer was not responsive to the question, and should have been excluded. Upon the direct examination the Commonwealth offered to prove the second assault but the court excluded the testimony; but, when appellant's counsel asked the question upon cross examination, the court overruled the objection and permitted the witness to answer, and it is insisted that this ruling constituted a reversible error, since appellant was charged with one crime, and evidence was admitted showing that he had also committed another crime. This answer, however, was brought out by the appellant's cross examination; and, that being true, he cannot complain. Moreover, it is almost impossible, at times, to keep from the attention of the jury at all stages of the trial, evidence of offenses which were so closely connected, as they were in this case. Under the circumstances, we do not think the court erred in allowing the question to be answered. Miracle v. Commonwealth, 158 Ky., 453; Gross v. Commonwealth, 151 Ky., 89.

2. It is further contended that the court erred in not giving instructions C and D asked by the appellant, which read as follows:

"C—Although you may believe that defendant had carnal knowledge of Catherine Smith, yet if you further believe that defendant had such carnal knowledge of her with her consent, you should find defendant not guilty."

"D—Although you may not find defendant guilty as set out in instruction No. 1, yet if you do believe to the

exclusion of a reasonable doubt that defendant in Marion County before the finding of this indictment herein did unlawfully detain Catherine Smith with the intent to have carnal knowledge of her against her will, you will find him, defendant, guilty, and so finding, you shall say in your verdict, 'We, the jury, find defendant guilty, of detaining Catherine Smith against her will with the intent to have carnal knowledge of her and fix his punishment at confinement in the penitentiary.' "

Instruction "C" was properly refused, because there was no evidence whatever that Catherine Smith consented to the act of appellant. She insists that he raped her, while appellant insists that he had nothing whatever to do with her, beyond making an improper proposal to her. He denies all carnal knowledge of Catherine Smith; and, that being true, the only question to be presented to the jury was that of rape. For the same reason instruction "D" was properly refused, since the evidence clearly shows that appellant was either guilty of rape, or he was not guilty at all. It is a well settled rule of practice that the court should not give an instruction upon a theory of the case that is without evidence to sustain it.

Furthermore, by the rejected instruction "D" appellant asked the court to instruct the jury that if they should find him guilty of detaining Catherine Smith against her will, with intent to have carnal knowledge of her, it should fix his punishment at confinement in the penitentiary, and not at death, which they were authorized to do in case they should find him guilty of rape. Appellant cannot, therefore, complain of the court's refusal to give this instruction, since the verdict actually found conformed to the verdict which he asked in case they should find him guilty of the lesser offense. The six instructions given by the court properly covered the law of the case, and there is no substantial criticism made against them; it is only claimed that the court refused to give instructions "C" and "D" above set out, and that the court improperly overruled appellant's motion for a peremptory instruction on his behalf. The latter question, however, will be considered later.

3. It is again insisted that the verdict and judgment are not sustained by the evidence. The evidence concerning the act charged was confined to the testimony of Catherine Smith and John W. Mouser for the Commonwealth, and that of the appellant in his own behalf.

Catherine Smith testified unequivocally, that appellant raped her, as laid in the indictment. Mouser, after testifying to an earlier conversation with appellant, relates a subsequent conversation with him as follows:

"A—An hour after that conversation I saw this girl he had been talking about here, going down through the bottom, about four hundred yards away, and I looked up and seen her going the way he had gone. I was fixing to go to Veech's blacksmith shop. I went and got my mare, and I had to go by Mr. Gamble's house. I looked down the field and seen the girl in there. Just as I passed the gate and got up beside the gate that goes into the lot, I heard Harry remark. He says, 'O, Mr. Mouser, I want to see you.' I looked around; I couldn't tell where the voice was coming from. I couldn't see him; and I seen the top of a cedar tree shaking, and he come down out of the tree, and he come out in the road; and I says, 'What are you doing up in that tree?' He says, 'Damn it, don't you know I got that girl and sent her over here through the field, and I guess she got with her mother when she got here; I stopped to talk to Grant Hays, and they beat me here, and she has gone; and, God damn her, I will have her or die.' I says, 'Harry, you have asked me for advice, and I tried to give it to you the best I knew how.' I says, 'You had better let that girl alone; you have no business with her.' I says, 'Her mother has got her, and you had better not try to get her. If she gets a writ out for you, you will be in serious trouble.' He says, 'I am not afraid of her getting out a writ; but, God damn Ann'—that is his wife—'God damn her! She is mean enough to do most anything; but I am not afraid of the girl's swearing out a writ.'"

Mouser further says that appellant admitted to him in the conversation referred to, that he had been intimate with his step-daughter. The only other testimony upon this subject is that of appellant. He denies that he made the statement related by Mouser, and denies that he ever had carnal knowledge of Catherine Smith. He admits, however, that on the second occasion on which Catherine claims he outraged her, he made an improper proposal to her, and that she declined to yield. Not only was there ample testimony to take the case to the jury, but in our opinion it sustains rather than discredits the verdict. The motion of appellant for a peremptory instruction was properly overruled.

4. Finally, appellant contends that the conduct of the attorney for the Commonwealth in his closing argument to the jury was prejudicial to appellant's rights. Upon this subject it is sufficient to say that the language in question did not transcend the bounds of legitimate argument.

Judgment affirmed.