## Gray et al. v. Commonwealth.

(Decided Feb. 16, 1934.)

ROY W. HOUSE and D. Y. COLSON for appellants.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On Sunday morning, January 8, 1933, some four or more men, seeking to wreak violence and death upon the family and inmates of the home of Will Smith, situated on Lost Fork of Elkhorn creek, Clay county, Ky., took positions some one hundred yards or more distant from the home on the opposite hillside, where, from under cover of its broom sage and bushes, they fired some twenty-five or thirty shots into the Smith home. One of these shots struck and almost instantly killed Esther

Smith, the sixteen year old daughter of Will Smith, while another struck and killed Brotha Lipps, a friend and kinsman of Smith, as he approached and was about to enter the Smith home.

For this ambushed killing of Brotha Lipps and Esther Smith, two indictments were returned by the grand jury of the Clay circuit court. For the latter's killing upon this occasion, they jointly indicted Jim Wagers, Noah Wagers, and the appellants, Tom Gray and Reubin Smith, accusing them of her willful murder, committed by feloniously and with malice aforethought banding themselves together and conspiring to arm themselves and go forth and shoot and murder Esther Smith, and that they did, while in said county and in furtherance of said conspiracy, go forth armed, and with malice aforethought did shoot and wound one Esther Smith, with guns and pistols, from which shooting and wounding she did then immediately die. By further paragraphs of the indictment each of the accused was respectively charged with the murder of Esther Smith, and each was further charged with aiding and abetting the one who actually did the shooting and killing.

Upon this cause coming on for trial as to the defendants Tom Gray and Reubin Smith, a petition was filed by the commonwealth for a change of venue, but the record discloses that, by agreement of the parties and their counsel in open court, after a conference with the court, for the reasons and upon the grounds assigned by it, the change of venue was refused, when it was agreed between the parties that the court should summon a special venire of jurors from the adjoining county of Jackson, which was done.

Upon trial, the defendants were found guilty as charged in the indictment, and their punishment fixed at life imprisonment.

Motion and grounds for a new trial were filed, heard, and overruled, and judgment pronounced upon the verdict, sentencing appellants to life imprisonment in the state reformatory.

To reverse that judgment this appeal is prosecuted.

The appellants, while assigning numerous grounds of alleged error, insist upon and argue but two grounds: (1) That the verdict of the jury is flagrantly against the weight of the evidence and contrary to all the proof

of disinterested witnesses; and (2) that the court erred in its instructions to the jury.

The evidence heard upon the trial, while very voluminous, was yet, in its analysis, directed to only two points. Point 1, testified to by some seven or eight witnesses for the commonwealth, is that, upon the occasion of this shooting and killing, the prosecuting witnesses were then at the home of Will Smith, when it was "good light," and that they clearly recognized the appellants and their codefendants, Jim and Noah Wagers, as they stood or crouched, three or four feet apart, in the broom sage growing upon the hillside, which faced, and was some hundred yards distant from, the Smith home, into which they all repeatedly fired. Not only did they testify as to their recognizing the defendants, but for surer identification of them they also undertook to specifically describe the clothes and hats which they were at the time wearing, the kind of guns and rifles they carried, and the relative order in which they stood in line while firing into the Smith home. These witnesses were all residents of the neighborhood, and claimed to be acquainted with both the appellants and the Wagers boys, jointly charged with them, and thus were able to identify them with certainty. On the other hand, as point 2, the testimony given by the appellants and their witnesses seeks to establish alibis for them, by showing that these appellants were far distant from this scene of murder at the time of its commission, and at such remote places had not only been seen by their friends but had talked with them, and who testified as to their presence there, though they nearly all failed while so testifying to very definitely fix the time of day when they were thus seen and conversed with by them.

The appellants argue that the testimony of the commonwealth's witnesses was not entitled to credit or belief by the jury, for the reason that they were clearly so prejudiced against the appellants by inflamed feeling and hate harbored by them that it should have convinced the jury that they were giving preconcerted and perjured testimony, framed up by them for the purpose of doing away with the appellant Gray, at whose ruin and discredit it was particularly directed, because he had testified against these witnesses in prior trials upon criminal charges, and would again testify against them in other of these trials then pending against them. Ap-

pellants, attributing such object to the alleged false testimony of these hostile prosecuting witnesses, argue the existence of this strife and feudal relationship existing between the Lipps and Wagers families and their friends against the Smiths and their friends, as furnishing the motive and reason for the adverse testimony of the commonwealth's witnesses against the appellants, even while admitting that it did not exist as to the appellant Reubin Smith, who was related to both sides, and had no connection with the trouble or feudal fighting of either clan, and should not have had their animosity.

Appellants, by counsel, earnestly insist that with such background and explanation of the hostile relations existing between the Smith family and kin, who were the commonwealth's witnesses, against the appellants and their codefendants, the Wagers boys, their adverse testimony, given under such bias against appellants, was so discredited by prejudice as to make it unworthy of belief.

Appellants' witnesses testified to seeing and talking with Smith and Gray at the storehouse, at one of their homes, and other places in the neighborhood four or five miles distant from the scene of this tragedy at the Smith home at the time it was there taking place, and contend that this alibi testimony therefore conclusively showed that they could not have been with or among those indicted and charged with having shot and killed the deceased, Esther Smith, in the distant home of her father, Will Smith, occurring there at the same time.

While impressed with the persuasiveness and force of appellants' argument in this contention, based upon the assumed truth of this alibi testimony, we are none the less not here authorized to ourselves consider its merit, as a jury, nor to ourselves as such determine the question of appellants' guilt or innocence upon it or upon what may be our own personal impression as to the relative weight and credibility of the conflicting testimony of these two contradictory groups of witnesses.

As against this alibi evidence, there was here given to the jury the testimony of some eight or more prosecuting witnesses, who testified directly to the point that they were eyewitnesses to this murderous firing upon the home of Will Smih, and that they, at such time, clearly and distinctly saw and recognized each of the appel-

lants, Tom Gray and Reubin Smith, as present with the Wagers upon that occasion, and as being two of the four defendants jointly indicted for this crime, and then saw them fire repeated shots into the Smith home; and also saw and recognized them as they, immediately afterwards, left their place of partial concealment on the hillside and walked away into the woods beyond.

There was thus, by this testimony, certainly given to the jury both direct and ample evidence of the appellants' guilt of the crime charged, of their having, together with the two Wagers boys, banded together and feloniously shot into the home of Will Smith and killed his daughter, Esther. Just what weight and credit the jury should give this direct eyewitness testimony, however, was the problem solely of the jury, and one where the court was not permitted to influence its finding therefrom by instructing it either as to what faith or credit it should give this testimony or to single out for its special consideration the evidence offered by appellants in their attempt to establish an alibi.

There was ample evidence of this character furnished by the testimony of the defendants' witnesses to have fully supported a finding by the jury that the defendants were not guilty of this crime with which charged, because of their alibi having been thereby proved, but the jury did not so find. It heard both sets of witnesses and observed their demeanor and impressiveness when testifying, and it had the right to make its own appraisement of the evidential weight and value of the testimony. Exercising this right, it believed the commonwealth's witnesses, adopted its theory of the case, and found a verdict upon its evidence, declaring the defendants were guilty.

The testimony of appellants and their witnesses, seeking to establish an alibi, is in direct conflict with that of the commonwealth's several witnesses, definitely stating that they were present at the time of the killing of Esther Smith and heard and saw everything that there and then occurred. Also this testimony is corroborated by that of other witnesses, who testified that they met or saw the appellant Gray carrying a gun, but a few minutes after this firing ceased leaving the near vicinity of the shooting.

Against this stands appellants' contradictory alibi evidence, and, although alibi testimony is usually viewed

with much suspicion, because of the ease with which it may be fabricated and the extreme difficulty found in most cases of disproving it, yet there are many instances, where it is given by frank and honest witnesses, when such proof should not only be found and accepted by the jury as persuasive but even as conclusive of the defendant's innocence. As said in the case of Bast v. Commonwealth, 124 Ky. 747, 99 S. W. 978, 983, 30 Ky. Law Rep. 967:

"An alibi is the strongest possible defense when thoroughly established, but it becomes, at once, the most dangerous and weakest of all defenses that could be set up, when it is not thoroughly established. It has been wisely made the province of the jury to say, from the evidence presented in each particular case, whether or not the alibi has been established."

Therefore, such being the condition of the evidence as here shown by the record, the court properly submitted the issue of appellants' guilt of the crime charged to the jury for its finding thereon. The jury having found a verdict of guilty upon ample supporting evidence, even though it is contended by appellants that this testimony of the prosecuting witnesses, upon which based, was biased and prejudiced against them, yet such contention does not authorize us to interfere with the verdict. In the case of Jones v. Commonwealth, 250 Ky. 217, 62 S. W. (2d) 56, 58, this court, in affirming the judgment of the lower court rendered upon a jury's verdict, found upon like conflicting evidence, said:

"This synopsis is sufficient to show a direct, positive, conflict in the evidence, fully authorizing the verdict of the jury, and that in behalf of the accused justifying an acquittal. The weight and effect of the evidence were matters wholly within the province of the jury. Clark v. Com., 105 S. W. 393, 32 Ky. Law Rep. 63; Weathers v. Com., 162 Ky. 146, 172 S. W. 107; Elmendorf v. Com., 171 Ky. 410, 188 S. W. 483. It is an established rule, if there is any substantial evidence showing the commission of the offense, the case should be submitted to the jury [Levering v. Com., 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140; Blankenship v. Com., 228 Ky. 830, 16 S. W. (2d) 478], and whether the witnesses for the common-

wealth or the defendant were telling the truth is for the jury to determine [Lewis v. Com., 224 Ky. 502, 6 S. W. (2d) 502; Mullins v. Com., 230 Ky. 624, 20 S. W. (2d) 442; Nelson v. Com., 232 Ky. 568, 24 S. W. (2d) 276]. It has been so often stated by this court that a reversal will be granted on the ground of insufficiency of the evidence, when, and only when, the verdict is palpably against the evidence, it would seem unnecessary to cite authorities to sustain it. However, see Cowan v. Com., 229 Ky. 168, 16 S. W. [2d] 766; Hall v. Com., 229 Ky. 646, 17 S. W. [2d] 751; Jones v. Com., 230 Ky. 24, 18 S. W. [2d] 287; Miller v. Com., 231 Ky. 527, 21 S. W. [2d] 840; Duggins v. Com., 217 Ky. 688, 290 S. W. 514. The record showing no errors prejudicial to the substantial rights of the accused, or that he has been deprived of a fair and impartial trial, this court will not reverse a verdict of the jury solely on the ground it is flagrantly against the evidence, unless the verdict shocks the conscience. Begley v. Com., 200 Ky. 563, 255 S. W. 147; Ross v. Com., 202 Ky. 204, 259 S. W. 50; Burchett v. Com., 204 Ky. 454, 264 S. W. 1066; Moore v. Com., 223 Ky. 128, 3 S. W. [2d] 190. That the witnesses on one side are more numerous than on the other does not of itself warrant this court in disturbing the verdict of the jury. Patton v. Com., 219 Ky. 475, 293 S. W. 974; Moore v. Com., 223 Ky. 128, 3 S. W. [2d] 190; Blankenship v. Com., 228 Ky. 830, 16 S. W. [2d] 478.''

Appellants next complain that the court erred in instructing the jury. This criticism is lodged especially at instruction No. 1, the conspiracy instruction, upon the alleged ground that it authorized the conviction of the appellants, whether they were or were not present and whether they did or did not participate in the shooting which resulted in the death of Esther Smith, and for such reason it was highly prejudicial. However, we do not consider this criticism as here meritorious. The instruction as given practically follows the wording of the indictment and submits to the jury, with the following instructions as given, the law applicable to every theory of the case here presented and supported by evidence. The only defense offered by appellants was an alibi, by which they undertook to show that, as they were not at the place at the time of the

killing, they could not have committed the offense. Under the instruction as given, the jury was directed to find the appellants guilty, if they believed from the evidence that they had conspired and banded together, and armed themselves, to go to this place and shoot Esther Smith, and that, pursuant to such conspiracy, they did so go, shoot, and kill her. The verdict shows that the jury did believe that they were there and did this. A careful reading of the record discloses that all the instructions given by the court were properly given to cover these different theories of the case for which there was supporting evidence. Barker v. Commonwealth, 159 Ky. 304, 166 S. W. 981; Gamble v. Commonwealth, 151 Ky. 372, 151 S. W. 924; Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476.

We do not deem it needful to here unduly extend this opinion by the detailed discussion of the several other assignments of alleged error enumerated in appellants' motions and grounds for a new trial, but which are not here insisted upon or argued in brief and may therefore be considered as abandoned.

A careful review of the whole record leads us to conclude that the appellants have here received the fair and impartial trial to which they were entitled, and in the course of which we perceive no errors were committed by the trial court prejudicial to their substantial rights. We appreciate and commend the fidelity and earnestness with which appellants' counsel, appointed by the court, has so faithfully, skillfully, and gratuitously championed and represented the cause and defense of his clients only as an officer of the court. This is a hard case and the penalty inflicted, of life imprisonment, is a severe one, and rendered upon a verdict found upon very conflicting evidence and where the alibi evidence for the appellants was very impressive, as tending to show that they were not present and did not participate in this ambushed killing of Esther Smith; and much doubt, of necessity, remains with us as to whether the commonwealth's evidence was sufficient to establish beyond a reasonable doubt the appellants' guilt of the crime charged. However, the jury saw fit to reject appellants' alibi proof and to believe the contradictory testimony of the commonwealth's witnesses. These witnesses also stood unimpeached before the jury, and it acted within its right in accepting and believing their version of this tragedy. All of the evidence was

heard by a jury summoned from an adjoining county, who doubtless knew neither the appellants nor any of the witnesses, and therefore were not prejudiced or biased in their attitude toward any of the witnesses they heard, nor can it be presumed that they were influenced by the inflamed passions of these warring factions, or state of public feeling in this county.

Therefore we are constrained to conclude, for the reasons as above set out, that the jury's verdict and the judgment thereon should not be disturbed.

Judgment affirmed.