## Jeffries v. Commonwealth.

(Decided June 19, 1934.)

C. C. BAGBY and OLIVER POPPLEWELL for appellant.

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, W. A. COFFEY, CHARLES H. FAIR and CHARLES F. MONTGOMERY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Huston Jeffries, Sylvester Warner, and Carl Hardin were indicted by the grand jury of Casey county, accused of the crime of willful murder, committed by the killing of Clay White.

The accusatory part of the indictment named the

crime "willful murder." In the descriptive portion it is charged that before the finding of the indictment they "did unlawfully, willfully, maliciously, feloniously conspire and agree together to kill and murder Clay White and in pursuance of said conspiracy the said Jeffries, Warner and Hardin did willfully, unlawfully and feloniously and with their malice aforethought did kill and murder Clay White by beating, bruising and wounding the said White with a hammer, irons and other hard substances and from which beating, bruising and wounding the said White did then and there immediately die. Contrary to the form of the statutes," etc.

At the request of the accused a separate trial was granted him. A general demurrer was interposed to the indictment, which was overruled by the court. Jeffries entered a plea of not guilty. A jury was impaneled, and after hearing the evidence of the commonwealth and Jeffries, he withdrew his plea of not guilty and entered in person a plea of guilty. The court instructed the jury:

"No. 1. You will find the defendant, Huston Jeffries, guilty as charged in the indictment and fix his punishment at confinement in the Penitentiary for life or death in your discretion of the jury.

"No. 2. Malice aforethought as used in the indictment means a predetermination to do the act of killing without legal excuse and it is immaterial how recently or remotely before the killing said predetermination was formed.

"No. 3. Feloniously as used in the indictment means proceeding from an evil heart; done with the deliberate intention to commit a crime.

"No. 4. A conspiracy as used in the indictment means a corrupt combination of two or more persons to do an unlawful act."

The jury returned a verdict fixing his punishment at death. He is here complaining of the insufficiency of the indictment and instructions Nos. 2, 3, and 4.

There appears in the clerk's record the affidavit of A. M. Waymon in which he states he was out of the courthouse "while the jury was in their room debating the case and at all times while they were considering the case, a large crowd was in the court yard, surging and moving to and fro and looking up and watching the

jury; that the jury had the East window of their room open and at various times some member of the jury was sitting or standing in said window; that the crowd in the near about were looking up at the jury room which the jurors could and did observe, and that he heard some member of the crowd making threats declaring what they would do unless the death penalty was given the accused." The affidavits of the sheriff, D. C. Grubbs, and the deputy sheriffs, E. B. Cochran and J. W. Overstreet, were filed, contradicting the affidavit of Waymon. The joint affidavit of the jurors who tried Jeffries was filed for the same purpose, and in it the jurors declared they heard no such statement as given in the affidavit of Waymon and that they "heard no statement, threat, command or expression from any person outside of the court house, on the street, or about the court house yard pertaining to the case, the trial, or their verdict."

The bill of exceptions does not contain these affidavits. Notwithstanding this fact, we have considered the affidavits of Waymon, the sheriff, the deputy sheriffs, and the jurors for the purpose for which they were filed as if they were properly included in the bill of exceptions. It is our conclusion the court properly overruled motion for a new trial on the ground stated in Waymon's affidavit.

In Jeffries' brief it is stated the trial judge, in his opinion overruling the motion and grounds for a new trial, "did not overstate the fine and noble effort made by him throughout this trying period to prevent mob violence and to save the State and County from disgrace," and "his efforts also to give the defendant a perfectly fair and impartial trial were equally great."

An examination of the record ourselves induces us to concur in these commendations.

The crime of which the accused was convicted, the evidence establishing the same, and the manner of its commission are set out in detail in the case of Warner v. Commonwealth, 255 Ky. — , — S. W. (2d) — this day decided. The appellant therein was jointly indicted with Jeffries for the same crime. It is unnecessary again to reproduce the evidence in this opinion.

The criticism of the indictment is not plausible. The proof of a conspiracy is but a means to establish malice, which must be premeditated, and a conspiracy, if any,

would be conclusive proof of such malice. The indictment charging Jeffries and his codefendants as principals in the commission of the crime of willful murder without the statements therein in reference to a conspiracy was sufficient to authorize the giving of an instruction on conspiracy. Ray v. Commonwealth, 230 Ky. 656, 20 S. W. (2d) 484, 66 A. L. R. 1297; Canada v. Commonwealth, 242 Ky. 71, 45 S. W. (2d) 834; Acree v. Commonwealth, 243 Ky. 216, 47 S. W. (2d) 1051.

The indictment adequately and properly charges Jeffries and his codefendants as principals, and it was entirely unnecessary for it to contain the language charging them with having entered into a conspiracy to commit the crime and that it was committed in pursuance of a conspiracy and while the same existed. Therefore considering as surplusage, and eliminating the language contained in it relative to a conspiracy, it properly and sufficiently charged them as principals in the commission of the crime of willful murder.

With the language relating to a conspiracy in or out of the indictment, under the rule stated in the Ray, Canada, and Acree Cases, the three defendants being adequately and properly charged as principals, when the evidence disclosed that a conspiracy was entered into by Jeffries and his codefendants and that they committed the crime in pursuance of it, and while the same existed, it was perfectly proper to give the usual instructions on conspiracy.

Viewing the indictment in the light of this rule, the language therein contained in reference to a conspiracy, even though it failed adequately to charge that a conspiracy existed at the time of the commission of the crime, such omission did not render the indictment demurrable. Therefore, the court properly overruled the demurrer.

Jeffries objected to instructions Nos. 2, 3, and 4 and is here insisting that they "might be construed as something of an argument for the death penalty; also, the giving of them was an error prejudicial to his substantial rights." He argues these instructions "bristle with comments that could easily have prejudiced the jury in favor of the death penalty. The definition of malice very likely caused the jury to think that there was a predetermination formed to kill the deceased, both preceding and instantly existing, and that this

character of malice aforethought might well be a reason for giving the death penalty instead of the life sentence. The statement the word 'feloniously' means proceeding from an. evil heart was highly prejudicial as perhaps it was thought by the jury that the court meant that if the act was done with an evil heart, that the fact that defendant was drinking heavily, and was drunk, would not in the least degree mitigate, and that the court meant that the death penalty ought to be inflicted.''

If this argument should be considered in this case as a valid reason for a reversal, a like reason would exist in every murder case in which the court defined these terms and the jury fixed the penalty at death. It should be noted no complaint is made of the definition of the terms, but it is merely insisted that because the defendant pleaded guilty and instruction No. 1 directed the jury to fix the penalty, it was improper for the jury to be informed by the instructions of the court of the meaning of the terms contained in the indictment. Section 225 of the Criminal Code of Practice directs that ''the court shall * * * instruct the jury on the law applicable to the case, which shall always be given in writing.'' We have been cited to no precedent, and we know of none, forbidding the court in discharging the duty imposed upon him by section 225, if he deems it proper, to define any technical term used either in the indictment or the instruction, so long as it is correctly done. A review of the indictment, the evidence, the instructions, and the trial of Jeffries, most thoroughly convinces us that he has been cautiously given a fair and impartial trial and that the extreme penalty imposed upon him by the verdict of the jury is solely the product of his own acts.

Wherefore, the judgment is affirmed.