## Deboe v. Commonwealth.

Decided Feb. 12, 1935.)

CHARLES FERGUSON and M. E. GILBERT for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is an appeal from a judgment of conviction entered at a special term of the court for the crime of rape of a female above the age of twelve, imposing the death penalty. Section 1154, Kentucky Statutes.

The accused presents as grounds of reversal: Error of the court in overruling a demurrer to the indictment; the verdict is not sustained by, and is flagrantly against, the evidence; the admission of incompetent, and the excluding of competent, evidence; the verdict is the result of passion and prejudice, arising from inflamed public sentiment and the presence in the courtroom during the trial of eighty-five armed deputy sheriffs; and error in an instruction of the court.

A correct and fair disposition of these grounds requires a review of the evidence.

It substantially shows that on the 16th day of May, 1934, Randall Johnson, in Livingston county, Ky., on the highway near Gum Spring Church, was engaged in the mercantile business. About 7:30 or 8 o'clock p. m. Willie Deboe and George Taylor approached the home of Johnson, which was near his store, and "hollered"; Mrs. Johnson appeared at the door, when they informed her they desired to obtain gas. At that time Johnson was in his home preparing for supper. To accommodate them, he left the house and walked out in the yard. They stated to him they "had run out of gas down the road a little bit," and wanted to get gas at his store. Johnson was not acquainted with either of them. He consented to go, and did go, with them to his store. After arriving, he drew three gallons of gas, when they informed him they desired to purchase cigarettes and tobacco; he and they entered the store; they purchased two packages of cigarettes and a plug of tobacco, and inquired of him if he had handkerchiefs for sale; he stated that he had them. Then Willie Deboe placed a gun in Johnson's side and announced, "Stick 'em up." He endeavored to argue with them, stating, "If there was anything in the store they wanted to take it." Deboe still holding a gun in his side, Taylor searched him, obtaining about $10 from his pockets. They were not satisfied, and asked him, "Where is your money?" They proceeded to tie his hands behind him and compelled him to lie on his back, and continued to search for money. While they were engaged in searching the store, Johnson assured them he had no more money, when they would curse him. They put out all the lights and employed a flash-light while engaged in the search. While this was occurring, Mrs. Johnson, who was at their home, was calling her husband. Johnson begged them to let him go to her, informing them she was in bad health. They inquired of him what was her ailment. He stated to them "she is in the family way." They loosened his hands; he arose, and they accompanied him to his home; he begging them not to do so on account of his wife and children. They cursed him, ordered him "to get on," or they would kill him, and declared they were going to his home. They compelled him to go in front, directing him to tell his wife, when they arrived at

his home, "there were two boys that wanted supper." On entering the home, she met them, when he informed her, "Here are two boys that want supper." Thereupon they stated to her "you are in a hold-up." They again tied the hands of Johnson and also his wife's; then tied her to a bedpost. Taylor ate his supper, and Deboe searched the house for money, continuously cursing because he was unable to find it. Mrs. Johnson informed him she had the Sunday school money. He declined to accept it. Taylor, on finishing eating, returned to the room, where Johnson, his wife, and Taylor were, and demanded to know "where was their automobile" and demanded Johnson deliver the key and go with him to the car. Before his departure, he and Deboe engaged in a "whispered conversation" in a room adjoining that in which were Johnson and his wife. Then Taylor forced Johnson to go with him to the car. After the car was secured, Taylor forced Johnson to get in it and accompany him to the store. Deboe opened the gate through which the car was driven. On arriving at the store, Taylor ransacked it in an effort to locate money; failing to find it, he laid on the counter such merchandise as he desired, of the value of about $100, then loaded it in Johnson's car. After Taylor and Johnson left in the automobile, Deboe, with a pistol in his hand, again entered the home of Johnson and again demanded of Mrs. Johnson to disclose where he could find money, when she again assured him she had only the Sunday school money. Thereupon, addressing her, he said, "Get in front of me." She obeyed his command and went into a bedroom. He then put his pistol in his pocket, walked up and took hold of her and said, "Kiss me." She refused to kiss him. He then stated that her husband had told them about her condition and said to her, "That won't make any difference." He pushed her clothing up to her hips; told her to lie down on the bed; she did so; and again he pushed up her clothing, and announced, "This does not suit me"; he drew a knife from his pocket and "cut her step-ins in two," and "ravished her." After so criminally assaulting her, he indulged in further conversation and departed, going to the store, when he and Taylor left in the automobile with the merchandise placed in it by Taylor while Deboe was at the home of Johnson.

Deboe and Taylor traveled the highway about four

miles, then returned, passing the premises of Johnson, eventually carrying the merchandise to Dyersburg, Tenn. Later Crawford was arrested at Charleston, Mo., suspected as one of the parties engaged in the crime of robbing Johnson's store and raping Mrs. Johnson. Johnson and his wife went to Charleston to determine the identity of Crawford whom they did not identify.

Some time later, in July, the sheriff of the county, acting on information, went to Dyersburg, Tenn., located the merchandise of Johnson, arrested Deboe and Taylor, and returned them to Livingston county. When first arrested, they denied all knowledge of the commission of the crimes and asserted ownership of the merchandise and stated where they had obtained it. However, after they were arrested, and before their arrival in Livingston county, they confessed, and thereafter repeatedly confessed the commission of the crime of robbing Johnson and his store; both strenuously insisted that Deboe had not committed the crime of rape.

On June 22, 1934, the judge of the circuit court, in the manner and as required by section 971-13, Kentucky Statutes, as amended by Laws 1932, c. 61, sec. 5, called a special term of court, ordering the impaneling of a grand and petit jury for the trial of criminal cases named in the notice posted for that purpose, including any indictment that might be returned by the grand jury against Deboe and Taylor, who were at that time confined in the Eddyville penitentiary for safe-keeping, charged with the crime of robbery and rape.

The judge's notice calling the special term recites that, since the last term of the court, robbery and rape had been committed by force and violence by reason of which two highly respected ladies of the county were outraged and raped in the presence of their husbands, and the accused apprehended, identified, and confined in the penitentiary for safe-keeping; therefore a special term of court was called beginning and continuing as stated in the notice.

The grand jury, on the 18th day of June, returned an indictment charging Deboe with the crime of rape and Taylor with aiding and abetting him in its commission. The descriptive portion of it reads:

"The defendants, Willie Deboe and George Taylor, * * * did unlawfully, wilfully, feloniously, rape, ravish and carnally know a female, * * * of and above twelve years of age, and not the wife of said Willie Deboe nor George Taylor and against her will and consent and by the use of force," etc.

The accused were brought into open court, informed of the nature of the indictment, and asked if they were able to employ counsel. They informed the court they were not. Thereupon the court appointed the Honorable Charles Ferguson to defend them. He accepted the appointment and proceeded to defend Deboe on the charge of rape. Deboe asked for a separate trial, and it was granted. Later a jury was impaneled and accepted by the commonwealth and Deboe. During the periods of adjournment, Deboe was confined in the Eddyville penitentiary.

On July 14th, the father of Deboe, with a relative by marriage, sought the judge and requested that Willie Deboe, the accused, be protected against violence during his trial. The father and the relative agreed with the judge that a sufficient number of deputy sheriffs be appointed to take care of the situation. The attorney of Deboe agreed to this arrangement, and, when Deboe was brought into court, he expressed his gratification for so protecting him against violence. There were eighty-five deputy sheriffs appointed in compliance with the agreement of the father, the relative, the counsel of Willie Deboe, and of the judge of the court.

On his trial, Deboe and Taylor admitted that they had planned the commission of robbery of Johnson and his store before they engaged therein; that they went to his place of business especially to accomplish the crime of robbery upon his person and store. On the witness stand, they recited minutely the details of of the robbery, seemingly with gratification and apparent satisfaction in its accomplishment. They admitted the presence of Deboe in the home of Johnson after the departure in the automobile of Taylor and Johnson. The only act detailed by Johnson and his wife which they denied is the act of ravishing Mrs. Johnson.

Johnson testified that, after Deboe and Taylor left the store with the car and the merchandise, he returned

to his home, and his wife was hysterical and crying, and at the time he entered his home her step-ins were lying on the floor and showed they had been cut with a knife and thrown where they were when observed by him.

The statute (section 1154) under which Deboe was convicted reads:

"Whoever shall unlawfully carnally know a female, of any above twelve years of age, against her will or consent, or by force, or whilst she is insensible, shall be guilty of rape," etc.

It is argued by Deboe that the indictment herein is defective, in that it fails to use the word "forcibly" following the word "feloniously"; and that the phrase "and by the use of force" following the word "consent" does not cure the defect.

In Commonwealth v. Lowe, 116 Ky. 335, 76 S. W. 119, 120, 25 Ky. Law Rep. 534, in the opinion the indictment is copied. It neither uses the word "forcibly" nor the phrase "and by the use of force," as the latter appears in the present case. The trial court sustained a demurrer to the indictment. Its judgment was reversed for proceedings. The indictment in the present case charges but one crime. Under the statute, it may have been committed by different means. The indictment may allege the modes and means in the alternative. As was said in the Lowe Case, section 126 of the Criminal Code of Practice "changes the common-law rule as to alternative allegations in an indictment as to the different modes and means which the accused may have resorted to in the commission of the offense charged. The indictment only charges the defendant with one offense—that of willfully and feloniously carnally knowing a female above the age of 12 years against her will and consent."

Even if it be regarded essential to charge that the act was "forcibly" committed on the person of the female against her will and consent, it is not doubtful that the words "and by the use of force," as they appear in the indictment, are sufficient to meet this requirement. Roberson's Criminal Law, sec. 562, p. 770, and cases cited.

We have ruled that it is indispensably essential

that an indictment for rape must employ the word "feloniously" (Reed v. Commonwealth, 76 S. W. 838, 25 Ky. Law Rep. 1029; Hall v. Commonwealth, 26 S. W. 8, 15 Ky. Law Rep. 856); but we have never ruled that, where the words "unlawfully, feloniously, rape and ravish, * * * by the use of force," are used in the indictment, it is bad on demurrer. We are not convinced the indictment herein is defective in any respect.

Instruction No. 1 is criticized on the same ground, on which the indictment is assailed. The instruction adopts the language of the indictment, and, having determined that the indictment is not defective, it follows the instruction is not subject to criticism.

Deboe complains of the admission of the evidence relating to the robbery of the person of Johnson and the taking of the merchandise from his store and its discovery in Tennessee in the possession of the accused.

In Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724, 727, we said:

"It is a rule of general application that on the trial of a criminal case that the commonwealth should not be permitted to introduce evidence showing that the accused had committed other crimes than the one for which he is being tried. But there are certain well-defined exceptions to this general rule under which the perpetration of other crimes may be shown by the commonwealth to establish (1) identity; (2) motive; (3) intent; (4) guilty knowledge; (5) a plan, system, or scheme of perpetrating crime; (6) to cover up previous crime. or the evidence of a crime for which he is at the time being tried; (7) or a crime, the proof of which is so interwoven as to be inseparable from the crime for which he is being tried, that the evidence of the two acts cannot be separated.

"The general rule and the exceptions thereto have been so often stated and applied by us in previous cases, a thorough and just consideration and disposition of this case do not call for a more extended statement of these exceptions and the reasons we have so often assigned in stating same. Morse v. Com., 129 Ky. 294, 111 S. W. 714, 33 Ky. Law Rep. 831, 894; More v. Com., 188 Ky. 505,

222 S. W. 934; Clary v. Com., 163 Ky. 48, 173 S. W. 171; Kirby v. Com., 206 Ky. 535, 267 S. W. 1094; Thomas v. Com., 194 Ky. 491, 239 S. W. 776; Newton v. Com., 195 Ky. 764, 243 S. W. 1031.

"Suffice to say that, under our pronouncement of the rule and the exceptions thereto, the guilt of accused may not be shown by evidence of other previous or subsequent crimes, but another crime or crimes may be shown by the commonwealth solely for a purpose clearly within the purview of some one or more of the exceptions to the general rule."

There is no conflict in the evidence showing their confessions before trial and their testifony on the witness stand. We have aften ruled that evidence of other crimes, proof whereof is so interwoven with the crime directly in issue that they cannot be separated, may be shown. See Duvall v. Commonwealth, 225 Ky. 827, 10 S. W. (2d) 279; Jones v. Commonwealth, 250 Ky. 217, 62 S. W. (2d) 56; Hilger v. Commonwealth, 254 Ky. 117, 71 S. W. (2d) 9; Marcum v. Commonwealth, 254 Ky. 120, 71 S. W. (2d) 17. This rule sustains the court's admission of the evidence now objected to. Aside from this, the acts and conduct of Deboe and Taylor from the beginning of the robbery of Johnson to its completion, which was the departing in the automobile with the merchandise, was res gestæ, and therefore the evidence showing the commission of the crime of robbery was admissible as the res gestæ. Farley v. Commonwealth, 218 Ky. 435, 291 S. W. 734; Brashear v. Commonwealth, 178 Ky. 492, 199 S. W. 21. It was proper to admit evidence relating to the merchandise to identify the accused. McCarty v. Commonwealth, 216 Ky. 110, 287 S. W. 363.

We are unable to discover any evidence offered by Deboe which the court refused to admit. It is complained in his brief that certain articles were published in a newspaper printed in an adjoining county, and it is intimated that this article disclosed statements of the Johnsons which tended to exonerate Deboe. An examination of the record does not sustain the state ment that the court refused to admit as evidence such newspaper article. The Johnsons testified that they had given no statements to the newspaper and offered

to explain same, when Deboe discontinued his examination of the witness, without eliciting the contents of the article or the Johnsons' connection with its publication.

It is true that Deboe denied the act of rape. On the other hand, the testimony of Mr. Johnson, corroborated by that of her husband and the circumstances, is abundantly sufficient to authorize the verdict of the jury. No motion for change of venue nor for a continuance was presented to, or acted on by, the court. The presence of the armed guards, as shown by the bill of exceptions, was secured at the request of Deboe's father and relative, acquiesced in by his counsel and approved by the accused.

Argument that the verdict of the jury was the produce of passion, naturally incident to the inflamed public sentiment, arising from the posting of the notice calling the special term, the crowded courtroom, and the presence of the armed deputy sheriffs, demands a reversal, is not authorized nor supported by the evidence. In this respect, this case is like unto Carsons v. Commonwealth, 243 Ky. 1, 47 S. W. (2d) 997; Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14, 20; Dewberry v. Commonwealth, 241 Ky. 726, 44 S. W. (2d) 1076.

In Carsons v. Commonwealth the contention was presented that a continuance should have been granted until public prejudice subsided.

In Dewberry, v. Commonwealth soldiers were in attendance during the trial. During the adjournment of court at noon hour, the accused's counsel, seemingly because of his connection with the defense, was assaulted by persons attending the trial. No motion for a change of venue nor for continuance was made by the accused.

In Payne v. Commonwealth no motion for change of venue nor for a continuance was made by the accused. She proceeded to trial to a jury which resulted in a verdict of conviction of the crime of murder.

In the Payne Case after the conviction, affidavits were filed attacking the verdict of the jury on the ground that it was the result of passion and prejudice, wherein it was declared:

" "The court and his officers were unable on account of the size of the crowd and its hostile attitude toward her [the accused], to control its members and to suppress their emotions and expressions.' * * * That members of the crowd 'smiled derision to the defense of the defendant, * * * and that such a condition was so prevalent as to impress the jury with the feeling of the crowd.' "

In disposing of the same question now vigorously presented, we said:

"The accused neither before the commencement of the trial nor during its progress made known to the court any claim the newspaper articles, the state of public sentiment, or the presence of the large crowd, or its conduct, in any manner, would or was interfering with, or preventing, her receiving at the hands of the jury a fair and impartial trial. The affidavits admitted she had knowledge of the newspaper articles and the presence in the court room of the immense crowd, its hostility to her and her codefendants both before and during the progress of the trial. To permit her to rely thereon after the return of an adverse verdict as a ground of a new trial, or a reversal, would be equivalent to condoning her willingness to speculate on the verdict of the jury, and, on it being adverse to her, accord relief from her own acquiescence. No presumption exists that the jury was influenced by the state of public feeling in the county or the presence or the conduct of the bystanders when it rendered its verdict finding the defendant guilty of murder. Gray et al. v. Com., 252 Ky. 830, 68 S. W. (2d) 430."

There is no showing herein of any acts, conduct, or statement of persons attending the trial of Deboe, as citizens or officials, indicating the slightest hostility toward the accused or manifesting the remotest wish that he be deprived of a fair and impartial trial at the hands of the jury. A careful, close scrutiny of the record and the briefs of Deboe convinces us he was awarded a fair and impartial trial. The Legislature, in providing for the death penalty for the crime of rape, realized that there were cases of sufficient magnitude to deserve the punishment of death. It was the province of the jury on the evidence presented under the in-

structions of the court to determine the degree of Deboe's guilt and fix the punishment therefor. It is our duty to administer the law as we find it, and, when young Deboe constructed for himself a situation that called for the degree of punishment as fixed by the verdict of the jury, he has no one to censure but himself. We are convinced, and have no doubt, of his guilt, and, being the sole author of his condition, he must suffer the consequences. We cannot find anything in the record to authorize our interference.

Wherefore the judgment is affirmed.

The whole court sitting.